STATE of Wisconsin, Plaintiff-Appellant-Cross-Respondent,

v.

William P. BARMAN, Defendant-Respondent-Cross-Appellant.†

Court of Appeals

*No. 93–2102–CR. Submitted on briefs February 7, 1994.—Decided March 15, 1994.*

(Also reported in 515 N.W.2d 493.)

†Petition to review denied.

On behalf of plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general of Madison.

On behalf of defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Stephen J. Eisenberg* of *Eisenberg Law Offices, S.C.* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The State appeals an order dismissing charges of homicide by negligent operation of a vehicle filed against William Barman. The State contends that the court erred by ruling that Barman had established a prima facie case of discriminatory prosecution in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The State also contends that even if a prima facie case were made, the claim was adequately rebutted by a showing of a valid exercise of prosecutorial discretion. We agree with the State and reverse the order of dismissal.

Barman cross-appeals the trial court's ruling that §§ 940.10 and 939.25, STATS.,[1] are not unconstitution-

---

[1] Section 940.10, STATS., states: "Homicide by negligent operation of vehicle. Whoever causes the death of another human being by the negligent operation or handling of a vehicle is guilty of a Class E felony."

Section 939.25, STATS., states:

> Criminal negligence. (1) In this section, "criminal negligence" means ordinary negligence to a high degree, consisting of conduct which the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another.
>
> (2) If criminal negligence is an element of a crime in chs. 939 to 951 or s. 346.62, the negligence is indicated by the term "negligent."

ally vague in violation of his equal protection and due process rights. He also claims that the court erred by concluding that the complaint set forth sufficient facts to establish probable cause that he committed homicide by negligent operation of a vehicle. Finally, he asserts that the court also erred by concluding that sufficient evidence was presented at the preliminary hearing to permit bindover. We reject Barman's arguments and affirm those rulings.

The relevant facts for purposes of appeal are not in dispute. At dusk on February 6, 1993, Barman was driving his Chevy Blazer on Dane County Trunk KP. The weather was clear, the road was dry and Barman was traveling at the legal speed limit of fifty-five miles per hour. County Trunk KP intersects U.S. Highway 12. One-half mile before the intersection, there is a sign on KP signaling the upcoming junction. Shortly before the intersection, another sign warns motorists to stop at the intersection. There is a stop sign at the intersection. Barman did not see the stop sign and entered the intersection without stopping. His Blazer struck the side of a car traveling on Highway 12, killing three of the car's passengers.

Barman was charged with homicide by negligent operation of a vehicle. He moved to dismiss the complaint on the ground it did not set forth sufficient facts establishing probable cause. At the preliminary hearing, the court commissioner denied this motion, found probable cause existed to believe Barman committed a felony offense and bound him over for further proceedings. Barman subsequently filed motions with the trial court to dismiss the complaint as insufficient to establish probable cause and to quash the bindover. He also moved to dismiss on the ground that §§ 940.10 and 939.25, STATS., are unconstitutionally vague in viola-

tion of his due process rights, and that his prosecution was discriminatory in violation of his equal protection rights.

At a hearing on these motions, Barman presented documentary evidence showing that from January 1, 1987, to October 23, 1992, there were forty-nine comparable fatal traffic accidents in Dane County in which a non-intoxicated, at-fault driver survived. Only two of these similarly situated forty-nine drivers were charged with violating § 940.10, STATS., and of these two, one had his case dismissed while the charges against the other were reduced. At the end of the hearing, the court made findings that the complaint and preliminary hearing sufficiently established probable cause to believe Barman committed a felony.

Following an evidentiary hearing, the court also concluded that § 940.10, STATS., was not unconstitutionally vague. However, it also found that Barman had presented prima facie proof to support a claim of discriminatory prosecution. It shifted the burden to the State to establish that its selection of Barman was based upon an exercise of valid prosecutorial discretion. The court then concluded that the State failed to demonstrate that its decision to charge Barman was an exercise of valid prosecutorial discretion, and the court dismissed the charges. The State's appeal and Barman's cross-appeal followed. Additional facts will be discussed as necessary.

## PRIMA FACIE EVIDENCE OF DISCRIMINATORY PROSECUTION

■■■■

A district attorney has great discretion in deciding whether to prosecute. *Sears v. State*, 94 Wis. 2d 128, 133, 287 N.W.2d 785, 787 (1980). The district attorney

has no duty or obligation to prosecute all complaints. *Id.* (citing *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 378, 166 N.W.2d 255, 260 (1969) *overruled on other grounds, State v. Kenyon*, 85 Wis. 2d 36, 45 n.4, 270 N.W.2d 160, 164 n.4 (1978)). In addition, the prosecuting attorney has great latitude in determining which of several related crimes to file against a defendant. *Id.* Exercise of this discretion necessarily involves a degree of selectivity. *Id.* at 134, 287 N.W.2d at 788.

The conscious exercise of some selective enforcement is not a constitutional violation. Rather, it is the selective, persistent and intentionally discriminatory prosecution in the absence of a valid exercise of prosecutorial discretion that violates a defendant's equal protection rights and constitutes a defense to the charge. *Locklear v. State*, 86 Wis. 2d 603, 610, 273 N.W.2d 334, 337 (1979); *State v. Johnson*, 74 Wis. 2d 169, 175, 246 N.W.2d 503, 507 (1976). If a defendant establishes a prima facie case of discriminatory prosecution, the burden shifts to the State to show an exercise of valid prosecutorial discretion. *Johnson*, 74 Wis. 2d at 175, 246 N.W.2d at 507.

The State challenges the court's finding that Barman established a prima facie case of discriminatory prosecution.[2] It concedes that Barman's prosecution

---

[2] We reject Barman's argument that the State may appeal only the court's order that the State had not exercised valid discretion. The court's earlier ruling that Barman had made a prima facie showing of discriminatory prosecution was not a final order. An appeal from a final order brings up all prior nonfinal orders adverse to an appellant and favorable to the respondent. *State v. Heyer*, 174 Wis. 2d 164, 168, 496 N.W.2d 779, 781 (Ct. App. 1993); § 809.10(4), STATS.

was selective and persistent, but it argues that the court erroneously applied the law by finding the prosecution intentionally discriminatory. Whether the court applied the proper legal standard in making a finding of purposeful discrimination is a question of law that we review de novo.[3] *State v. McCollum*, 159 Wis. 2d 184, 194, 464 N.W.2d 44, 48 (Ct. App. 1990). We conclude that the court identified, but misapplied, the proper legal standard.

The trial court recognized Barman was alleging that he was the only one ever charged with this crime, and that the test for whether a solitary prosecution is discriminatory is as explained in *Sears*. In *Sears*, the defendant was the first person in eight years in Milwaukee County to be convicted of solicitation to commit sexual perversion. The conviction followed Sears' offer to perform oral sex on a police officer for $20. *Id.* at 131, 287 N.W.2d at 786. On appeal, Sears argued that other defendants arrested for homosexual activity were usually charged with disorderly conduct. He believed this established that his prosecution was discriminatory. *Id.* at 134, 287 N.W.2d at 788.

The court noted that a claim of unconstitutional discriminatory prosecution is made when a defendant alleges and proves "that the defendant is a member of a class being prosecuted solely because of race, religion, color or other arbitrary classifications, or *that he alone is the only person who has been prosecuted under this statute.*" *Id.* (quoting *State v. Boutch*, 60 Wis. 2d 397,

---

[3] Whether a statute's enforcement is motivated by a discriminatory purpose is a question of fact that is reviewed under the clearly erroneous standard. *State v. McCollum*, 159 Wis. 2d 184, 194, 464 N.W.2d 44, 47 (Ct. App. 1990). However, whether the fact finder applies the proper legal standard in making this determination is a question of law. *Id.* at 194, 464 N.W.2d at 48.

402, 210 N.W.2d 751, 754 (1973) (emphasis in original)). In meeting this burden, however, the court noted that:

> Solitary prosecutions may present a prima facie defense of selective or discriminatory prosecution *when coupled with a substantial showing by the defendant that the government's discriminatory selection for prosecution is based on a desire to prevent the exercise of constitutional rights* or motivated by personal vindictiveness on the part of a prosecutor or the responsible member of the administrative agency recommending prosecution.

*Id.* at 135, 287 N.W.2d at 788 (citation omitted) (emphasis added). The court denied Sears' selective prosecution claim in part because he failed to show either of these circumstances. *Id.*

Here, the trial court applied the *Sears* rationale in a circuitous fashion to the facts at hand. The court stated: "This showing (that [Barman] is the only one prosecuted), however, must be coupled with prima facie proof that his selection is an attempt to prevent the exercise of a constitutional right, to-wit: equal protection under the law. Sears Id." Under *Sears*, a violation of equal protection is the conclusion reached after demonstrating that the State's prosecution was motivated by a desire to deny a defendant's constitutional right other than the right to equal protection. For example, the cases cited in *Sears* involve free speech and free association rights. *Id.* at 135, 287 N.W.2d at 788 (citing *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) (claim defendant prosecuted for vocal opposition to census); *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973) (en banc) (claim defendant prosecuted for anti-war activities); *United States v.*

*Berrios*, 501 F.2d 1207 (2d Cir. 1974) (claim defendant prosecuted for political and union activities)).

Nevertheless, a defendant attempting to establish a discriminatory purpose is not limited to producing evidence that the prosecution was motivated by an attempt to squelch a constitutional right. As *Sears* indicates, a defendant may also show personal vindictiveness on the part of the prosecutor. As the Supreme Court noted in *Wayte v. United States*, 470 U.S. 598 (1985), a case involving an allegation of discriminatory prosecution, " 'Discriminatory purpose' . . . implies more than . . . intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 610 (quoting *Personnel Administrator v. Feeney*, 442 U.S. 256, 279 (1979)). Any evidence that Barman is being singled out because of the prosecutor's desire to adversely impact on him would demonstrate purposeful discrimination. Barman failed to show his selection was because of a desire to adversely affect him, and thus he failed to establish a prima facie case of discriminatory prosecution.

## PROSECUTORIAL DISCRETION

Even if Barman had made a prima facie case of discriminatory prosecution, we conclude that the prosecutor validly exercised his prosecutorial discretion. *Johnson*, 74 Wis. 2d at 175, 246 N.W.2d at 507, notes that once a prima facie case is established, "the burden to show an exercise of valid prosecutorial discretion will shift to the state." In *Locklear*, 86 Wis. 2d at 611, 273 N.W.2d at 337 (quoting *State v. Duffy*, 54 Wis. 2d

61, 65, 194 N.W.2d 624, 626 (1972), our supreme court stated: "The test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." (Citation omitted.) The court went on to uphold the State's policy because "[t]he state has convincingly shown that there is a rational justification for the charging policy . . . ." *Id.* at 612, 273 N.W.2d at 338. This test is consistent with a traditional equal protection analysis.[4] We therefore inquire whether the State has given a rational justification for its classification system.[5] This is a question of law that we review de novo. *See, e.g., McCollum*, 159 Wis. 2d at 202, 464 N.W.2d at 51 (court of appeals independently inquired whether challenged classification system was substantially related to important governmental objectives).

The district attorney, C. William Foust, gave several reasons for deciding to prosecute Barman. His most notable reason was that he had reexamined the

[4] *See, e.g.,* WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE, § 13.4 at 192-93 (1984) (under traditional equal protection analysis, the question that usually must be asked is whether there is a rational relationship between the classification and legitimate law enforcement objectives, though classifications based on race or national origin are subjected to a strict scrutiny-compelling interest test and gender is subjected to intermediate scrutiny).

[5] We note, however, that a heightened level of scrutiny would be required had Barman put forth prima facie proof that his selection was based on a suspect classification or the State's attempt to squelch his constitutional rights. *See, e.g., State v. McCollum*, 159 Wis. 2d 184, 202, 464 N.W.2d 44, 51 (Ct. App. 1990) (analyzing governmental policy of arresting only women for prostitution under intermediate level of scrutiny to determine whether challenged classification is substantially related to important governmental objectives).

law of homicide by negligent operation of a vehicle, realized he had been mistaken in his assessment of what constituted criminal negligence and, applying his new understanding, determined that probable cause existed to charge Barman.[6] This is a rational justification for the decision to prosecute Barman. It demonstrates that Barman's prosecution was not motivated by a discriminatory purpose. He was selected not because of a desire to adversely affect him, but because Foust reevaluated the applicable law.

Our courts have recognized a change in policy designed to maintain that consistency in charging is a valid exercise of discretion. *Sears*, 94 Wis. 2d at 137, 287 N.W.2d at 789. Similarly, a change in a charging policy to accurately reflect the prosecutor's new understanding of the elements of a crime is a valid exercise of discretion. Were the rule otherwise, a prosecutor's initial misunderstanding of the law might forever preclude prosecution of criminals for violation of a once misconstrued offense. As one court explains, "a failure to prosecute others because of a lack of knowledge that they were subject to prosecution for the same offense as

---

[6] During the evidentiary hearing, Foust stated:

What was different with respect to Mr. Barman was that I took the time to read the case law of homicide by negligent operation of a motor vehicle and came to realize that my conception of what I had to prove previously, i.e., something that virtually amounted to recklessness, was mistaken, and that really all that had to be proven was ordinary negligence.

. . . .

And as I read the rule of law in those cases, and saw that the rule of law applied to those fact[ ] settings, I concluded that [the] same rule of law had to apply to this fact setting, because I thought this fact setting was at least equal to and I think more egregious than some of those fact settings.

defendant does not amount to a denial of equal protection under the Fourteenth Amendment." *State v. Rogers*, 315 S.E.2d 492, 505 (N.C. App. 1984); *see also Falls v. Dyer*, 875 F.2d 146, 149 (7th Cir. 1989) ("Gaffes in the enforcement of an ordinance are neither here nor there for federal purposes . . . .").

We recognize, however, that Foust's reevaluation does not fully explain why Barman was the first in six and one-half years to be charged with violating § 940.10, STATS. Even under Foust's former erroneous understanding of the law, some of the forty-nine similarly situated others could have been, but were not, charged with homicide by negligent operation of a vehicle. The other factors the prosecutor considered in making charging decisions included the deterrent effect of the prosecution, the extent of harm caused, the driver's relationship to the victim, whether the collision occurred on a busy road and the driver's age. Considered in total, they show a rational basis for a charging decision.

Prosecutors have a legitimate interest in deterring violations of others and may consider the deterrent effect in a charging decision. *Sears*, 94 Wis. 2d at 136 n.2, 287 N.W.2d at 789 n.2. The trial court ruled that deterrence was not a proper factor in this case because negligence involves unintentional acts, and it is impossible to deter people from committing acts they do not intend. Over a hundred years ago, Oliver Wendell Holmes suggested that imposing criminal liability for certain negligent acts would make people think harder about the risks created by their conduct, thus reducing risky conduct and promoting public safety. *Commonwealth v. Pierce*, 138 Mass. 165, 176 (1884). The State might reasonably believe that prosecuting negligent drivers might deter future deaths by encouraging

others to exercise the requisite standard of care when they drive.

The extent of harm caused is a legitimate consideration in deciding whether to prosecute. The ABA Standards for Criminal Justice, Standard 3-3.9(b) states in part: "Illustrative of the factors which the prosecutor may properly consider in exercising his or her discretion are: . . . (ii) the extent of the harm caused by the offense . . . ." Here, the prosecutor apparently considered it significant that Barman killed three people. The State may, in the exercise of its discretion, consider the number of people Barman killed in deciding the number of crimes to charge. *See State v. Rabe*, 96 Wis. 2d 48, 76, 291 N.W.2d 809, 822 (1980). Certainly it may consider the same fact in deciding whether to charge a crime at all.

The State may also properly consider whether the road on which the accident occurred was heavily traveled. Foust explained that the amount of traffic on the road is relevant to determining whether Barman should have realized his conduct was creating a substantial and unreasonable risk of death or great bodily harm to another under § 939.25(1), STATS. Greater traffic density translates into a greater likelihood of causing substantial injury, which in turn increases the individual's duty to exercise due care and the degree of negligence for failure to do so. Determining the degree of negligence involved is crucial to determining whether probable cause exists to support the charge. A prosecutor may not prosecute a charge unsupported by probable cause. SCR 20:3.8(a) (Law. Co-op. 1994). It is a proper exercise of discretion to consider factors relevant to making a probable cause determination. *See, e.g., Locklear*, 86 Wis. 2d at 612, 273 N.W.2d at 338.

The State may also take into account a potential defendant's age. Foust explained that he had occasionally considered the advanced age of a negligent driver as a factor in not charging the driver.[7] His understanding is consistent with the commentary to the ABA Standards for Criminal Justice, Standard 3-3.9, Discretion in the Charging Decision.[8] It is consistent with federal decisions, *Government of Virgin Islands v. Harrigan*, 791 F.2d 34, 37 (3d Cir. 1986), and it is consistent with allowing our courts to consider a defendant's age at sentencing. *State v. Johnson*, 105 Wis. 2d 657, 669, 314 N.W.2d 897, 903 (Ct. App. 1981). The

---

[7] The following colloquy demonstrates Foust's rationale:

[MR. FOUST]: . . . I mean, age is always a factor. Age is something you take into account in terms of what—how much is the criminal justice system going to accomplish with a person.

. . . .

[Q]: Are you saying that the older you are, the less care your office is requiring people to exercise?

[MR. FOUST]: No. There is—there are limits to what the criminal justice system is able to do with particular defendants, and there are particular defendants who are more amenable, perhaps, to treatment or supervision of some sort from the criminal justice system.

I have a hard time imagining the purpose of probation for an 81-year-old person.

So it's not that we demand less care of them. It's that following a conviction, I don't know what we'd do with an 81-year-old person.

[8] The commentary to Standard 3-3.9 states in part:

Nor is it desirable that the prosecutor prosecute all crimes at the highest degree available. . . . Differences in the circumstances under which a crime took place, the motives or pressures activating the defendant, mitigating factors of the situation, *the defendant's age*, prior record, general background, and role in the offense, and a host of other particular factors require that the prosecutor view the whole range of possible charges as a set of tools from which to carefully select the proper instrument to bring the charges warranted by the evidence. (Emphasis added.)

195

prosecution's consideration of age in this manner in deciding whether to bring charges is a valid exercise of its discretion.

As long as it is not a controlling factor, the state may consider the relationship between the potential defendant and the victim in deciding whether to charge. Foust explained that he was *less likely* to charge a person whose negligent driving killed a relative or friend. His rationale was that such a person has already suffered sufficient punishment by negligently killing a loved one. In the process of weighing numerous factors, Foust was entitled to consider the public's sense of justice in this regard, as long as this is not the only or decisive factor.

We can only speculate why Foust exercised his discretion in each of the forty-nine other cases and decided not to charge. Here, however, all the factors he viewed as relevant in deciding to charge apparently were in alignment. Barman may be a victim of circumstance, but he is not a victim of unconstitutional selective prosecution.

## CROSS-APPEAL

Barman cross-appeals, arguing first that the homicide statute is unconstitutionally vague. He also claims that the complaint failed to establish probable cause. Finally, he argues that the trial court erred by concluding that sufficient evidence was presented at the preliminary hearing. We address each of these in turn.

Barman claims that §§ 939.25 and 940.10, STATS., are unconstitutionally vague in violation of his federal and state rights to equal protection and due process of

196

law.[9] He argues that the statutes do not specify what acts an individual can or cannot do to avoid criminal liability and that they fail to distinguish between an accident involving ordinary and criminal negligence. Thus, he claims, the statute fails to give fair notice of what conduct is prohibited. His conclusions are based on what he views as the imprecision of § 939.25, STATS., defining criminal negligence. He argues that the phrase "ordinary negligence to a high degree" has no exact meaning, and that the statute does not clearly indicate what conduct creates a "substantial and unreasonable" risk of death or great bodily harm.

The constitutionality of a statute is a question of law that we review de novo. *State v. Neumann*, 179 Wis. 2d 687, 710, 508 N.W.2d 54, 63 (Ct. App. 1993). The concept of vagueness rests in the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. *Milwaukee v. K.F.*, 145 Wis. 2d 24, 32, 426 N.W.2d 329, 333 (1988). Thus, before a statute or rule may be invalidated for vagueness:

> [T]here must appear some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited such that one bent on obedience may not discern when the region of proscribed conduct is neared, or such that the trier of fact in ascertaining guilt or innocence is relegated to creating and applying its own standards of culpability rather than applying standards prescribed in the statute or rule.

---

[9] The Fourteenth Amendment to the United States Constitution guarantees to all citizens due process and equal protection of the laws. Article I, § 8, of the Wisconsin Constitution guarantees to all state citizens due process of law.

*State v. Courtney*, 74 Wis. 2d 705, 711, 247 N.W.2d 714, 719 (1976). However, constraints of language prevent expressing a statute with mathematical precision. *Id.* at 711, 247 N.W.2d at 718. We only require a fair degree of definiteness to uphold a statute; it will not be voided merely by showing that the boundaries of prescribed conduct are somewhat hazy. *Id.* at 710-11, 247 N.W.2d at 718-19.

The history of changes and challenges to Wisconsin's homicide by negligent operation of a vehicle statute is relevant to our inquiry. In 1941, the legislature enacted § 340.271(2), STATS., 1941, which provided in part: "Any person who, by the operation of any vehicle at an excessive rate of speed or in a careless, reckless or negligent manner constituting or amounting to *a high degree of negligence*, but not wilfully or wantonly, shall cause the death of another . . . . " (Emphasis added.) In *State ex rel. Zent v. Yanny*, 244 Wis. 342, 12 N.W.2d 45, (1943), the statute was challenged as unconstitutionally vague because it did not define what was meant by a "high degree of negligence." *Id.* at 344, 12 N.W.2d at 46. The court held that the statute was not unconstitutionally vague. In doing so, it explained the difference between ordinary negligence, negligence to a high degree and gross negligence. The court explained that the required negligence

> is conduct that not only creates unreasonable risk of bodily harm to another, but also involves a high degree of probability that substantial harm will result to such other person. In other words, the culpability which characterizes all negligence is magnified to a higher degree as compared with that present in ordinary negligence. On the other hand, it is something less than wilful and wanton conduct

which, by the law of this state, is the virtual equiva-
lent to intentional wrong.

*Id.* at 347, 12 N.W.2d at 47.

In 1955, the statute was revised as § 940.08,
STATS., 1955, and included homicide by negligent use of
a vehicle or a weapon. The legislature created a defini-
tion for "high degree of negligence" resembling the *Zent*
court's definition. Section 940.08(2) stated: "A high
degree of negligence is conduct which demonstrates
ordinary negligence to a high degree, consisting of an
act which the person should realize creates a situation
of unreasonable risk and high probability of death or
great bodily harm to another." This definition com-
bined the standard definition of ordinary negligence
with the additional element of a high probability of
death or great bodily harm. *Hart v. State*, 75 Wis. 2d
371, 383, 249 N.W.2d 810, 814-15 (1977), *overruled on
other grounds, Estate of Safran*, 102 Wis. 2d 79, 93, 306
N.W.2d 27, 34 (1981). This is an objective standard; a
defendant's acts are measured against whether a nor-
mally prudent person under the same circumstances
should reasonably have foreseen such conduct exposed
another to unreasonable risk and high probability of
bodily harm. *Id.* at 384, 249 N.W.2d at 815; *see also*,
Walter Dickey ET AL., *The Importance of Clarity in the
Law of Homicide: The Wisconsin Revision*, 1989 WIS. L.
REV. 1323, 1374.

In 1988, the legislature revised the statutes again.
Homicide by negligent operation of a vehicle, presently
§ 940.10, STATS., was separated from homicide by negli-
gent handling of a dangerous weapon, presently
§ 940.08. Criminal negligence was uniformly defined in
§ 939.25, STATS., 1988, to mean "ordinary negligence to
a high degree, consisting of conduct which the actor
should realize creates a substantial and unreasonable

risk of death or great bodily harm to another." This revision changed the description of the degree of risk created by the negligent conduct. Instead of an "unreasonable risk and *high probability* of death or great bodily harm," the new definition requires a " *substantial* and unreasonable risk of death or great bodily harm." (Emphasis added.) Dickey, *supra*, suggests this revision did not work a substantive change but was made to avoid the inference that "high probability" meant a statistical likelihood greater than 50%. *Id.* at 1374 n.177.

We conclude that the definition of criminal negligence as applied to homicide by negligent operation of a vehicle is not unconstitutionally vague. The statute's revisions since *Zent* have not changed its substance or made it more vague. The phrase "ordinary negligence to a high degree" that Barman claims is vague is virtually identical to the phrase "high degree of negligence" that *Zent* held was not unconstitutionally vague. While "high degree of negligence" was not defined in *Zent* and the court had to explain its meaning, here the legislature has defined ordinary negligence to a high degree to be conduct that unreasonably and substantially creates a risk of death or great bodily harm. This definition is no more vague or imprecise than the explanation given in *Zent*.

Other jurisdictions have reached the same conclusion in evaluating their homicide by negligent operation of a vehicle statutes. *See, e.g., State v. Johnson*, 653 P.2d 428 (Haw. Ct. App. 1982); *State v. Randol*, 597 P.2d 672 (Kan. 1979). Furthermore, the statute does give notice of what acts are prohibited. The statute makes clear that causing death by highly negligent operation of a vehicle is prohibited. True, the

statute does not tell the public which specific acts are criminally negligent. The statute is incapable of such precision; whether a reasonable person would foresee that the conduct engaged in created an unreasonable and substantial risk of death or great bodily injury will necessarily vary with the facts of each case. This does not make the law unconstitutionally vague. *See Zent*, 244 Wis. at 346-47, 12 N.W.2d at 47 ("It is not necessary that the law be so definite that the offending operator of a vehicle may know with certainty just how negligent he may be in causing the death of another person before he becomes criminally liable under the negligent homicide statute. No operator of a vehicle has a legal right to be negligent in any degree.") (citation omitted).

Barman next argues that the complaint failed to set forth sufficient facts to establish probable cause. The sufficiency of a complaint is a matter of law that we review de novo. *State v. Adams*, 152 Wis. 2d 68, 74, 447 N.W.2d 90, 92 (Ct. App. 1989). Section 968.01, STATS., requires that a criminal complaint meet probable cause requirements to confer personal jurisdiction on the court. *Adams*, 152 Wis. 2d at 73, 447 N.W.2d at 92. A complaint is sufficient when the alleged facts, together with reasonable inferences drawn from them, allow a reasonable person to conclude that a crime was probably committed by the defendant. *Id.* The question is whether the reasonable inference drawn from the complaint permits the conclusion that Barman's operation was criminally negligent.

The complaint alleged the following: Barman was traveling at the legal highway speed of fifty-five miles per hour on County Trunk KP. There is a warning sign two-tenths of a mile before the intersection of KP and

201

Highway 12 warning motorists to stop ahead. There is a stop sign at the intersection of KP and 12. The topography of the intersection was level, and both signs were clearly visible and completely unobstructed. Barman failed to see the stop sign and drove into the intersection without stopping. One witness believed he entered the intersection at fifty-five miles per hour. Barman had no explanation for his failure to see the stop signs.

We conclude that these facts and their reasonable inferences support the conclusion that Barman was criminally negligent and probably committed homicide by negligent operation of his vehicle. Barman allegedly went through a stop sign and into a busy intersection at highway speeds without seeing the signs warning of the intersection or requiring him to stop. A reasonably prudent person should have foreseen that such conduct would create a substantial and unreasonable risk of death or great bodily harm.

The facts here are not significantly distinguishable from those in *State v. McIntosh*, 137 Wis. 2d 339, 404 N.W.2d 557 (Ct. App. 1987), and *State v. Cooper*, 117 Wis. 2d 30, 344 N.W.2d 194 (Ct. App. 1983). McIntosh passed a stop sign at a highway intersection at sixty-five miles per hour without slowing and struck another car killing its driver. *McIntosh,* 137 Wis. 2d at 343, 404 N.W.2d at 559. Cooper went through a red light at fifty miles per hour and killed both occupants of the car she struck on the intersecting highway. *Cooper*, 117 Wis. 2d at 33, 344 N.W.2d at 196. In both cases, we concluded that the evidence was sufficient to support the juries' findings that the defendants committed homicide by negligent operation of a vehicle. *McIntosh*, 137 Wis. 2d at 345-46, 404 N.W.2d at 560; *Cooper*, 117 Wis. 2d at 39, 344 N.W.2d at 198.

Barman argues that *McIntosh* and *Cooper* should be reversed. He argues that § 939.25, STATS., contains an element of *mens rea* and that he can only be criminally negligent if he was aware of his conduct. Because he was not aware of the stop sign, or the fact that he missed it, he argues that he cannot be guilty of criminal negligence. Barman is mistaken. As we have already noted, the standard for criminal negligence is an objective one; defendant's conduct is judged from the perspective of a reasonably prudent person. Barman confuses criminal negligence with criminal recklessness.

Finally, Barman argues the trial court erred by concluding that sufficient evidence was presented at the preliminary hearing to establish probable cause. The focus of a preliminary hearing is to ascertain whether the facts and reasonable inferences drawn from them support the conclusion that the defendant probably committed a felony. *State v. Dunn*, 121 Wis. 2d 389, 397-99, 359 N.W.2d 151, 155 (1984). Our review is limited to examining the evidence sufficiently to determine if there was any substantial ground for the commissioner's judgment that probable cause existed. *See id.* While the trial court determined that there was a substantial ground for the commissioner's judgment, we owe no deference to that determination but review the matter de novo. *See id.*

We conclude that the evidence presented at the hearing was a substantial ground for the conclusion that Barman probably committed vehicular homicide. The evidence presented was nearly identical to the relevant allegations in the complaint. Barman claims that the State had to present evidence that he was subjectively aware of the stop sign and the fact that he missed

it. Again, he is mistaken. The standard is objective, and from that perspective the evidence supported a conclusion that Barman's conduct would create a substantial and unreasonable risk of death or great bodily harm.

We conclude that the trial court misapplied the applicable law of discriminatory prosecution and thus erred by finding Barman had established a prima facie case that his prosecution was discriminatory. We further conclude that the prosecutor gave rational justification why Barman was prosecuted and properly exercised valid discretion in prosecuting Barman. We therefore reverse the trial court on this issue. Additionally, we conclude that the trial court did not err by determining that Wisconsin's homicide by negligent operation of a vehicle statute is constitutional, that the complaint established probable cause and that the preliminary hearing established probable cause. We affirm on those issues.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded. No costs on appeal.