STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas E. SCHMIDT, Defendant-Appellant.

Court of Appeals

*No. 2012AP64–CR. Submitted on briefs October 30, 2012.
—Decided November 14, 2012.*

2012 WI App 137

(Also reported in 825 N.W.2d 521.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael E. O'Rourke* of *O'Rourke Law Office*, Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Sandra L. Tarver*, assistant attorney general, and *J.B. Van Hollen*, attorney general and *Christian A. Gossett*, district attorney, and *Adam J. Levin*, assistant district attorney, Oshkosh.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. NEUBAUER, P.J.   Thomas Schmidt appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI) and operating with a prohibited alcohol content (PAC), both fourth offense, pursuant to Wis. Stat. § 346.63(1)(a) and (b) (2009–10).[1] Schmidt contends that the trial court erred in requiring him to submit to the horizontal gaze nystagmus (HGN) test outside the presence of the jury but at the time of trial and in admitting the results of the test. Schmidt argues that the trial court's order violated his Fifth Amendment privilege against self-incrimination. We disagree. The evidence was not testimonial, and therefore its admission at trial was not barred by the Fifth Amendment. We affirm.

## BACKGROUND

¶ 2.   On April 15, 2010, Schmidt arrived at the Winnebago County Jail to pick up his daughter, who had been arrested for OWI. Jail regulations mandate that a drunk driving arrestee is released only to a responsible party who is absolutely sober. The staff at the jail suspected Schmidt had been drinking and asked Winnebago County Sheriff's Deputy Matthew Weisse to check on Schmidt. Schmidt admitted to Weisse that he

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

had driven to the jail and that he had consumed some wine earlier that night. Weisse asked Schmidt to perform field sobriety tests, and Schmidt consented. On the HGN test, Schmidt exhibited six out of six indicia, which Weisse testified indicates impairment. Schmidt was unable to complete the walk-and-turn test. After refusing further field sobriety testing, Schmidt was arrested for OWI. Schmidt submitted to a forensic blood draw, which showed a blood alcohol concentration of .13 percent.

¶ 3. At trial, Weisse testified about Schmidt's arrest. Schmidt's attorney cross-examined Weisse about other possible causes of nystagmus, including diabetes. Weisse testified that he did not know if diabetes could cause nystagmus and that he did not know if Schmidt had any condition that could affect the outcome on the HGN test. The State asked the trial court for permission to have Weisse perform the HGN test on Schmidt; Schmidt objected. The trial court sustained Schmidt's objection, but ruled that if Schmidt decided to testify and the State established a foundation that Schmidt was sober at the time of trial, then the trial court would permit the HGN test outside the presence of the jury and allow the State to recall Weisse to testify as to the results.

¶ 4. Schmidt chose to testify. He testified that he did not drink any alcohol the day of the trial or the night before. Regarding the testing, Schmidt's attorney told the court, "[I]f we're going to do the HGN, [we] want them to do the [walk and turn.]." The trial court ordered Weisse to administer the tests outside the presence of the jury. Weisse administered the tests to Schmidt and then testified that he had observed zero out of six indicia of impairment on the HGN test and that Schmidt was "pretty unsteady" on the walk-and-turn test. The jury convicted Schmidt of both OWI and operating with a PAC.

329

## DISCUSSION

¶ 5. Schmidt makes two arguments on appeal. First, Schmidt argues that the trial court erred in allowing the HGN test at the time of trial and contends that such error violated his Fifth Amendment right against self-incrimination. Second, Schmidt argues that he was denied his right to a fair trial when the trial court allowed the test at the time of trial.[2] We reject both arguments and affirm.

### Fifth Amendment Right Against Self-Incrimination

■

¶ 6. The Fifth Amendment of the United States Constitution and article 1, section 8 of the Wisconsin Constitution protect a suspect from being compelled by the state to provide self-incriminating testimony. *State v. LaPlante*, 186 Wis. 2d 427, 436–37, 521 N.W.2d 448 (Ct. App. 1994). Where the historical facts are undisputed, we review the constitutional significance of those facts de novo. *State v. Stevens*, 123 Wis. 2d 303, 313–14, 367 N.W.2d 788 (1985).

■

¶ 7. The constitutional prohibition against compelled self-incrimination applies only to testimonial or communicative evidence, not to physical tests. *State v. Babbitt*, 188 Wis. 2d 349, 360–61, 525 N.W.2d 102 (Ct. App. 1994). The privilege does not bar compulsion to submit to physical testing such as fingerprinting, pho-

---

[2] Schmidt argues about the "field sobriety testing" on the day of trial. The real issue is the trial court's decision to allow the HGN test if Schmidt agreed to testify; Schmidt insisted on repeating the walk-and-turn test. At any rate, our analysis is the same for both tests.

tographing or measuring, writing or speaking for identification, assuming a stance, or making a particular gesture. *Schmerber v. California*, 384 U.S. 757, 764 (1966) (the privilege is a bar against compelling communications or testimony but not compulsion that makes the accused the source of real or physical evidence). This rule is well established.

> [T]he prohibition of compelling a man [or woman] in a criminal court to be witness against himself [or herself] is a prohibition of the use of physical or moral compulsion to extort communications from him [or her], not an exclusion of his [or her] body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his [or her] features with a photograph in proof.

*Holt v. United States*, 218 U.S. 245, 252–53 (1910) (Holmes, J.).

¶ 8. Wisconsin follows this long-standing rule. In *Babbitt*, the court held that the refusal to perform a field sobriety test was admissible as evidence of probable cause to arrest for OWI and that admission was not a violation of the defendant's Fifth Amendment right against self-incrimination. *Babbitt*, 188 Wis. 2d at 362–63. In doing so, the court made clear that the tests themselves are not testimonial.

> Field sobriety tests are not testimonial in nature because the suspect does not intend to convey a statement as to his or her state of sobriety by performing the test. Furthermore, field sobriety tests involve no requirement that the suspect make admissions or respond to police inquiries regarding prior alcohol use.

*Id.* at 361; *see also State v. Isham*, 70 Wis. 2d 718, 731, 235 N.W.2d 506 (1975) (voice identification did not violate privilege against self-incrimination because

privilege "does not reach to words spoken, not for content, but to demonstrate the voice level and voice characteristics"); *State v. Mallick*, 210 Wis. 2d 427, 435 & n.5, 565 N.W.2d 245 (Ct. App. 1997) (holding privilege does not bar admission of refusal to submit to field sobriety tests and collecting cases rejecting application of Fifth Amendment privilege to physical evidence); *State v. Hubanks*, 173 Wis. 2d 1, 18, 496 N.W.2d 96 (Ct. App. 1992) (compelled in-court voice sample not testimonial).

¶ 9.   Schmidt's time-of-trial HGN test is classic physical evidence. By performing the test, Schmidt was not compelled to disclose his perceptions or thoughts or convey any statement. The test was not testimonial.

*Fair Trial*

¶ 10.   Schmidt argues that he was denied the right to a fair trial when the court "required" him to participate in the time-of-trial HGN test. We have held, above, that the time-of-trial administration of the HGN test did not violate Schmidt's Fifth Amendment right against self-incrimination. Furthermore, Schmidt's characterization of the test as "required" is misleading, at best. Schmidt put his performance of the HGN test at issue by suggesting that his diabetes could affect the results. He then chose to testify and provided the necessary foundation for admission of the test results. There was no violation of Schmidt's right to a fair trial.

*By the Court.*—Judgment affirmed.