**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 6, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP541**

**STATE OF WISCONSIN**

Cir. Ct. No. **2017CV223**

**IN COURT OF APPEALS
DISTRICT II**

VILLAGE OF MISHICOT,

    PLAINTIFF-APPELLANT,

V.

JODI A. ARSENEAU,

    DEFENDANT-RESPONDENT.

       APPEAL from an order of the circuit court for Manitowoc County: ROBERT DEWANE, Judge. *Reversed and cause remanded for further proceedings.*

       ¶1    NEUBAUER, C.J.[1] Village of Mishicot appeals from an order dismissing a citation for an ordinance violation against Jodi A. Arseneau. The

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

circuit court's dismissal was based on its conclusion that the Village violated Arseneau's Fourteenth Amendment rights of equal protection by selectively prosecuting her. The Village argued that Arseneau failed to show a prima facie case of selective prosecution. We agree and therefore reverse and remand for further proceedings.

## BACKGROUND

¶2 Arseneau is a resident of the Village. Her property is located in a floodway. In June 2016, Arseneau wanted to repair and expand a storage shed on her property. She discussed with the Village clerk whether such construction could be undertaken in a floodway. After communicating with the Wisconsin Department of Natural Resources (DNR), the Village clerk sent a July 1, 2016 letter to Arseneau explaining that the DNR stated that such a structure is not permitted in the floodway.

¶3 Despite the letter, Arseneau began construction on the shed. On July 18, 2016, the Village sent another letter advising Arseneau that she was in violation of the Village's floodplain ordinance and building ordinance (for building without a permit) and needed to stop construction immediately. The letter stated that, if she refused to comply, she would be subject to ordinance enforcement.

¶4 The Village received an August 2, 2016 letter from the DNR advising that Arseneau's construction was in violation of the Village's floodplain ordinance and "must be brought into compliance." The letter stated that, in order to be compliant, "the structure needs to be removed or to be moved to a compliant location." If the Village failed to advise the DNR of its enforcement plan, the DNR "may need to take action," which could include notifying the Federal

Emergency Management Agency and "could jeopardize the Village's status with respect to the National Flood Insurance Program (NFIP)." The letter further explained: "A community participating in the NFIP is required to adopt and enforce a floodplain management ordinance that meets minimum NFIP requirements. A community that does not enforce its ordinance can be placed on probation or [be] suspended from the program." Probation could result in premium surcharges to Village residents for flood insurance. Suspension means that flood insurance would not be written or renewed, and suspension "could also impact mortgages for some community residents."

¶5      Based on her conversations with the Village clerk, Arseneau believed that if she put the shed on a heavy duty, legitimate trailer, then it would comply with the ordinance as the shed could then be moved if a flood occurred. But the Village clerk's August 18, 2016 letter explained that, per the DNR, putting wheels on the structure was not an option as it was not a vehicle, and people also tend to leave such structures behind when a flood occurs.

¶6      In January 2017, Arseneau was cited and convicted for building in a floodway and building without a permit. Arseneau appealed to the circuit court, which affirmed her conviction.[2] Arseneau moved for reconsideration, suggesting that she was not permitted a full trial on all of the issues. The circuit court reopened the case, requesting briefs and scheduling an evidentiary hearing in January 2019.

---

[2] The Honorable Gary L. Bendix presided over the appeal from the municipal court. The Honorable Robert Dewane was then assigned the case.

¶7      Moving for dismissal of the citation, Arseneau claimed that the Village's prosecution violated her Fourteenth Amendment equal protection rights because it was unjustifiably selective.  She pointed out that another Village resident, James Eells, owns property located nearby and in the floodplain, and maintains a storage unit and two enclosed trailers within the floodway.  Yet, Eells was not cited.  She also noted that, during a festival, the Village allows enclosed trailers to stay for about a week in a nearby park which is mostly within the floodway, and the trailer owners were not cited.

¶8      The Village responded that Arseneau was advised multiple times before the citation that the trailer was in violation.  The Village also pointed out that the DNR had threatened action against the Village if it did not enforce the ordinance against Arseneau.

¶9      The testimony established that, even before Eells purchased the storage unit, he wanted to make sure it did not violate any ordinance, so he asked the Village clerk.  She told him it was acceptable.  Only after he spent around $5000 on the unit was it determined that it was in violation and he needed to move it.

¶10     When asked if anyone else in the Village had been cited under this ordinance, the clerk testified, "No.  Anybody asked to take some action took it," and she went on to provide several examples.

¶11     After submission of evidence and hearing arguments of counsel, the circuit court determined that the Village did selectively prosecute Arseneau and granted Arseneau's motion to dismiss.  The court agreed with the Village that there was no evidence of well-established discriminatory factors such as race, religion, or gender.  Rather, the court determined an "arbitrary classification" was

made when the Village did not cite Eells only because he could sue the Village for the clerk's error, and, instead, the Village cited Arseneau because she had no basis to sue the Village. The Village appeals.

## DISCUSSION

*Standard of Review and Applicable Fourteenth Amendment Law*

¶12   At issue in selective prosecution cases is a potential violation of the Equal Protection Clause of the Fourteenth Amendment. *See **State v. McCollum**,* 159 Wis. 2d 184, 196-98, 464 N.W.2d 44 (Ct. App. 1990). In ***State v. Kramer***, 2001 WI 132, ¶14, 248 Wis. 2d 1009, 637 N.W.2d 35 (emphasis added; citations omitted), our supreme court aptly set forth the parameters of the selective prosecution analysis:

> A prosecutor has great discretion in deciding whether to prosecute in a particular case. Exercise of this discretion necessarily involves a degree of selectivity. For this reason, a prosecutor's conscious exercise of some selectivity in enforcement does not in itself create a constitutional violation. A violation of the Fourteenth Amendment of the United States Constitution will occur, however, when a defendant can show "*persistent selective and intentional discrimination* in the enforcement of the statute in the absence of valid exercise of prosecutorial discretion."

¶13   Before a defendant is entitled to an evidentiary hearing on the claim, he or she carries the burden of making a prima facie case of discriminatory prosecution. ***Kramer***, 248 Wis. 2d 1009, ¶15. Two prongs must be shown: a discriminatory effect and a discriminatory purpose. *Id.*, ¶18. To show a discriminatory effect, the defendant must have been "singled out for prosecution while others similarly situated have not." ***County of Kenosha v. C & S Mgmt., Inc.***, 223 Wis. 2d 373, 401, 588 N.W.2d 236 (1999). "Similarly situated" means

that the circumstances show "no distinguishable legitimate prosecutorial factors that might justify making prosecutorial decisions." *Kramer*, 248 Wis. 2d 1009, ¶20 (citation omitted). To show a discriminatory purpose, the prosecutor's selection must have been based on an impermissible factor (such as race, religion, or other arbitrary classification). *Id.*, ¶18. When the prosecution is a solitary one, as here, the defendant's claim may also be proven by a "substantial showing" that the decision to prosecute was an attempt to prevent the exercise of constitutional rights or was prompted by personal vindictiveness. *Id.*; *State v. Barman*, 183 Wis. 2d 180, 188-89, 515 N.W.2d 493 (Ct. App. 1994). If a defendant successfully makes a prima facie case based on the two prongs, he or she is entitled to an evidentiary hearing, and "the burden then shifts to the state to show that the charging decision reflects a valid exercise of prosecutorial discretion." *Kramer*, 248 Wis. 2d 1009, ¶15.

¶14    Typically, whether the defendant has established a prima facie case based on both prongs involves factual inquiries, such that we would review the circuit court's determinations of discriminatory effect and purpose under the clearly erroneous standard. *Id.*, ¶17. Here, however, the material, historical facts are undisputed, and when that is the case, "we review the constitutional significance of those facts de novo." *State v. Schmidt*, 2012 WI App 137, ¶6, 345 Wis. 2d 326, 825 N.W.2d 521. In addition, whether the circuit court identified the correct legal standard and applied it correctly are questions of law for our independent review. *Barman*, 183 Wis. 2d at 188.

*Arseneau Did Not Make a Prima Facie Showing of Discriminatory Effect*

¶15    Arseneau failed to meet her burden of proof to show the first prong–discriminatory effect.  Arseneau argues that the nonprosecution of Eells is prima facie evidence of a discriminatory effect, as she and Eells were "similarly situated."[3]  We disagree, as she fails to show that their differing situations do not have "distinguishable legitimate prosecutorial factors that might justify" citing Arseneau, but not Eells.  *See **Kramer***, 248 Wis. 2d 1009, ¶20.

¶16    The Village notified Arseneau that her shed construction would violate the ordinance; that, once she began construction, she should stop; and that she would be subject to ordinance enforcement.  Ignoring the Village's express warning, Arseneau completed her construction.  In the earlier circuit court proceeding, the court affirmed the citation.  On appeal, Arseneau argues only that she was selectively prosecuted as "she is not the only person in violation," developing no argument challenging the merits of the citation.  *See **Kramer***, 248 Wis. 2d 1009, ¶15 (a claim of selective prosecution "is not a defense on the merits to the criminal charge itself, but an independent assertion that" the charges were brought for unconstitutional reasons (citation omitted)).

¶17    The DNR notified the Village of Arseneau's violation, which "must be brought into compliance."  It stated that the shed "need[ed] to be removed or to be moved to a compliant location."  The DNR required a "plan" for "enforcement action," absent which, negative consequences could occur.  Specifically, residents

---

[3] Arseneau pointed out that the Village allows enclosed trailers to stay for a week in a park which is largely within a floodway, and it does not cite the trailer owners.  But the only person she specifically addresses is Eells.  *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we do not address undeveloped arguments).

of the Village, which is a community participant in NFIP, could face higher premiums for flood insurance, lose flood insurance through the program altogether, and have their mortgages impacted. All of Arseneau's property was within the floodway, and the trailer option was not acceptable to the DNR. Arseneau offered no alternative "plan" for "enforcement action" to the Village other than removal or citation.

¶18 By contrast, before purchasing his storage unit, Eells wanted to make sure he complied with the ordinances, and the Village clerk advised him that the unit was acceptable. It was discovered later on that the clerk erred, and the Village then requested that Eells move the storage unit. The clerk testified that Eells has been cooperative in trying to work out a solution. Most significantly, no DNR warnings were received with respect to Eells. Arseneau points to nothing to suggest that the DNR's identification of her property but not Eells' is unfounded or improper. Thus, there are "distinguishable legitimate prosecutorial factors" that might have justified the nonprosecution of Eells at that time.

¶19 Arseneau relies almost exclusively on the notion that her citation was discriminatory because she could not have brought a lawsuit against the Village, whereas Eells could because of the clerk's error in telling him that he could place his storage unit on his property. There are several flaws with this assertion.

¶20 Evidence of a threatened or retaliatory lawsuit by Eells is threadbare, if nonexistent. As best as we can tell, the only purported evidence about a lawsuit was the testimony of the clerk, who testified that she did not make any final decisions about ordinance enforcement as that was the Village Board's responsibility. She testified that the Village and Eells were trying to work out a

solution as a result of her error and that she "was very concerned about the Village being sued for damages because I made a mistake." Although it is understandable that the clerk would be self-conscious about the risk of a lawsuit because she was the one who made the error, there is no evidence that her concern was actually based on any personal knowledge of such a suit (e.g., Eells told her he would sue). Her testimony therefore really proves nothing about a lawsuit or, more specifically, about a lawsuit being the reason Eells has not been cited. No one from the Board testified, no exhibits were produced showing or implying that Eells planned to sue if he was cited, and Eells himself testified, but said nothing about a lawsuit. To the extent the circuit court made a finding, or implied one, that the Village did not cite Eells because it would face a retaliatory lawsuit, it is unsupported by the evidence. *See Schreiber v. Physicians Ins. Co.*, 223 Wis. 2d 417, 426, 588 N.W.2d 26 (1999).

¶21 Further, if the Village considered the equitable impact of its erroneous advice, Arseneau does not explain why that is not a legitimate factor that might justify a different approach. Arseneau fails to show why discretionary leeway with a person to whom the Village inadvertently gave bad advice would be an impermissible consideration, much less persistently selective and intentionally discriminatory. She does not demonstrate that the Village's decision fell outside of the "great latitude" and "degree of selectivity" afforded prosecutorial decisions. *Barman*, 183 Wis. 2d at 186-87 (explaining that there is "no duty or obligation to prosecute all complaints"). Arseneau also fails to explain how the clerk's mistake, and perhaps different treatment based on equitable considerations, vis-à-vis one individual, confers the benefit of that mistake on others who are in violation.

*Arseneau Did Not Make a Prima Facie Showing of Discriminatory Purpose*

¶22    Arseneau's failure to show the first prong is fatal to her claim and sufficient for a reversal. Even if she had met that burden, we nonetheless conclude that she failed to establish the second prong—discriminatory purpose.

¶23    Arseneau contends her prosecution was discriminatory because it constituted an "arbitrary classification" based on her purported inability to sue the Village whereas Eells could sue.

¶24    In the section above, we have already explained that Eells' alleged lawsuit was speculative in several respects—as to whether Eells was actually considering it, as to whether the Village based its nonprosecution decision on it, and as to why it would necessarily be a constitutionally impermissible consideration. Moreover, Eells' property was not then the subject of DNR enforcement. Arseneau failed to show a discriminatory purpose arising from the nonprosecution of Eells.

¶25    Arseneau asserts that Eells was favored over her as he ran an important business, he could move his business out of town, and he repaired certain Board members' cars. In light of the evidence, however, Arseneau failed to show that she was cited, and Eells not, on account of some impermissible, arbitrary, vindictive, or illicit preferential basis.[4]

---

[4] As noted, when the prosecution is solitary, the defendant's claim may also be proven by a "substantial showing" that the decision to prosecute was an attempt to prevent the exercise of constitutional rights or was prompted by personal vindictiveness. Arseneau has not attempted to show any such discriminatory purpose.

¶26 Because Arseneau failed to make a prima facie showing of either a discriminatory effect or purpose, we reverse the circuit court's order dismissing the Village's action and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.