STATE of Wisconsin, Plaintiff-Appellant,†

v.

Lester E. HAHN, Defendant-Respondent.

Court of Appeals

*No. 94–2567–CR. Submitted on briefs July 10, 1995.—Decided July 18, 1996.*

(Also reported in 553 N.W.2d 292.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Alan R. Kesner*, assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Dennis J. Miller* and *Michael J. Mortimer* of *Miller & Mortimer* of Pittsburgh, Pennsylvania, and *Bruce Elbert* of *Doepke, Hannon, Elbert & Pfitzinger* of Beaver Dam.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   In this appeal, the State candidly acknowledges that it seeks to establish that video poker machines are "gambling machine[s]" *per se*. In its prosecution of defendant Lester Hahn for collecting the proceeds of "any gambling machine," contrary to § 945.03(5), STATS.,[1] it claims that it need prove only

---

[1] Section 945.03(5), STATS., provides in part:

451

that Hahn knew that the proceeds he collected resulted from the operation of video poker machines. The trial court disagreed and in a pre-trial order proposed to instruct the jury that before they could find Hahn guilty, they had to be satisfied beyond a reasonable doubt that he knowingly and intentionally collected gambling proceeds from the video poker machines.[2] We granted the State's motion for leave to appeal the order and now affirm in part and reverse in part with directions.

For purposes of this appeal, it is undisputed that Hahn, through his employee, collected the proceeds from video poker machines he placed in three taverns in Jefferson County, Wisconsin. The State contends that this proof establishes the offense of collecting the proceeds of a gambling machine. It proposes that the trial court instruct the jury that a violation of § 945.03(5), STATS., requires a showing of two elements: "First, that the machine [from which defendant collected the proceeds] . . . was a gambling machine.

---

Whoever intentionally does any of the following is engaged in commercial gambling and is guilty of a Class E felony:

. . . .

**(5)** Sets up for use for the purpose of gambling *or collects the proceeds of any gambling machine* . . . .

(Emphasis added.)

[2] The trial court proposed to instruct the jury as follows:

Before the defendant may be found guilty of this offense [§ 945.03(5), STATS.], the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements of this offense were present:

First, that defendant knew that the machine in question was, in the time period in question, used as a gambling machine.

Second, that the defendant intentionally and knowingly collected gambling proceeds of the gambling machine.

Second, that the defendant collected the proceeds of the gambling machine."[3]

[3] The State requested that the trial court instruct the jury as follows:

> Commercial gambling, as defined in Wis. Stat. § 945.03(5), is committed by one who intentionally collects the proceeds of any gambling machine.
>
> Before the defendant may be found guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements of this offense were present.
>
> First, that the machine in question was a gambling machine.
>
> Second, that the defendant collected the proceeds of the gambling machine.
>
> The first element requires that the machine is a gambling machine. A gambling machine, as defined in Wis. Stat. § 945.01(3), is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine. The phrase "chance, even though accompanied by some skill," means that chance must predominate over skill in determining the outcome of the game.
>
> "Gambling machine" does not include an amusement device if it rewards the player exclusively with one or more nonredeemable free replays for achieving certain scores and does not change the ratio or record the number of the free replays so awarded.
>
> The second element requires that the defendant intentionally collected the proceeds of the gambling machine.
>
> "Intentionally" requires that the defendant had the mental purpose to collect the proceeds of the gambling machine. You cannot look into a person's mind to find out his intent. You may determine intent directly or indirectly from all the facts in evidence concerning this offense. You may consider any statements or conduct of the defendant which indicate his state of mind. You may find the purpose to collect the proceeds of the gambling machine from such statements or conduct, but you are not required to do so. You are the sole judges of the facts, and you must not find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant intentionally collected the proceeds of the gambling machine.

■ The instruction proposed by the State defines "gambling machine" in terms of § 945.01(3), STATS., but does not assist the jury in determining whether the video poker machines involved in this prosecution meet that definition. The State assumes that video poker machines are gambling machines *per se* and no further instruction is necessary. We disagree. We conclude that because a video poker machine may be used for either amusement or gambling, the trial court must instruct the jury as to what the evidence must show to establish that the machine from which defendant collected proceeds was a "gambling machine."

Section 945.01(3), STATS., defines "gambling machine" as follows:

> (a) A gambling machine is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine.
>
> (b) "Gambling machine" does not include any of the following:
>
> . . . .
>
> 2. Any amusement device if it rewards the player exclusively with one or more nonredeemable free replays for achieving certain scores and *does not* change the ratio or *record the number of the free replays so awarded.*

(Emphasis added.)

---

If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant intentionally collected the proceeds of a gambling machine, then you should find the defendant guilty.

If, however, you are not so satisfied, then you must find the defendant not guilty.

Under this definition, we conclude that the jury may find that Hahn violated § 945.03(5), STATS., if they are satisfied that he collected the proceeds from video poker machines knowing they were being used for gambling and that the proceeds he collected were derived from such gambling.

If the evidence at trial is consistent with the testimony of the tavern operators at Hahn's preliminary examination, Hahn cannot claim that the video poker machines were "amusement device[s]." At Hahn's preliminary hearing, the operators of taverns in which he placed video poker machines testified that the machines awarded successful players free replays which were recorded by the machines. The tavern keepers paid the successful player cash for the accumulated free replays and by operation of a remote control device behind the bar expunged the replays.

A video poker machine operated in this way is not an "amusement device" under § 945.01(3)(b)2, STATS., for two reasons. First, it rewards the player with redeemable free replays. Second, it records the number of free replays awarded.

The "free replay[ ]" language was added to § 945.01(3)(b)2, STATS., by Laws of 1979, ch. 91. The analysis by the Legislative Reference Bureau states that the purpose of the amendment was to change the result of *State v. Lake Geneva Lanes, Inc.*, 22 Wis. 2d 151, 125 N.W.2d 622 (1963), where the court held that a free replay awarded the operator of a pinball machine was "something of value" and therefore pinball machines were "gambling machine[s]." 1979 Assembly Bill 512, LRB-2456/2. However, the amendment made two important qualifications: (1) the free replays had to be "nonredeemable"; and (2) the amusement device could not record the number of free replays awarded.

The prohibition against redeeming free replays is consistent with the requirement that a contrivance be only an "amusement device" and not a "gambling machine." Not so clear, however, is why an "amusement device" cannot record free replays. We may assume, however, that the drafters of the amendment were aware that free replays are "an incentive that fosters the gambling spirit." *People v. Cerniglia*, 11 N.Y.S.2d 5 (1939), *quoted in* Robert J. Urban, *Gambling Today Via The "Free Replay" Pinball Machine*, 42 MARQ. L. REV. 98, 111 (1958). For years, the status of free replays awarded by amusement devices was debated in courts and legislatures across the country. *See* 42 MARQ. L. REV. at 104-14. In 1957, the Wisconsin legislature defeated a bill to permit pinball machines which paid off in free replays because of opposition of law enforcement agencies which believed that this latitude would open the door to syndicate gambling. *Id.* at 101 & n.27. Urban noted that the view of the *Lake Geneva Lanes* court was being challenged by "an ever stronger minority." *Id.* at 109-10. He suggested that perhaps the reason the minority view did not prevail was that state legislatures were revising anti-gambling laws to permit free replays awarded by machines of one sort or another. *Id.* at 110 & n.88.

In Laws of 1979, ch. 91, the Wisconsin legislature joined those state legislatures which distinguished between machines whose free replays were not recorded and those machines which metered or recorded extra games. *See id.* at 113. Urban commented:

> The object of this rather recent test, applied where the free replay is permitted under general, partially definitive, or specific statutes is to diminish the

danger of actual pay-offs made on the number of additional plays, by eliminating any accurate registration of such to determine pay-off amounts. This added precaution seems to recognize, of necessity, the inherent tendency and actual practice of using such devices for gambling purposes.

*Id.* (footnotes omitted).

While a jury could find that the video poker machines which are the subject of this prosecution do not qualify as "amusement device[s]," we reject the State's argument that they are gambling machines *per se*. A video poker machine need not record or redeem free replays. We agree with the Attorney General that, ."[a]s a general proposition, an article which is capable of innocent uses is usually held not to be a gambling device unless expressly so defined by statute or unless shown to have been used for gambling." 30 Op. Att'y Gen. 300, 301 (1941); *see also Dallmann v. Kluchesky*, 229 Wis. 169, 282 N.W. 9 (1938) (basketball machine not gambling machine where there was no pay-off device, and it was not possible to play more than one game with a single coin). A video poker machine may be used for innocent purposes if the machine either does not award free replays or requires that the replays be used as earned. The machines in question do not have these innocent characteristics.

The fact that a video poker machine does not meet the definition of an "amusement device" does not require the conclusion that it is a gambling machine; it simply does not satisfy the exception as an amusement device. However, the video poker machines which are the subject of this action are "gambling machine[s]" because they "afford[ ]" the successful player an opportunity to obtain "something of value" even if the player's "prize" is not automatically awarded by the

457

machine but is awarded by the owner or lessee of the machine. Section 945.01(3)(a), STATS., only requires that the machine afford the player the opportunity to obtain a prize; the machine itself need not award the prize. A "contrivance" is a "gambling machine" "whether or not the prize is automatically paid by the machine." *Id.* The legislature's choice of the word "affords" is significant. If the legislature had intended that the contrivance itself must award a prize before it may be considered a gambling machine, it would have defined "any gambling machine" as "any contrivance which rewards the player with something of value."

The trial court's order correctly states the law as far as it goes. However, its proposed instruction is incomplete in that it does not inform the jury as to what it must find to conclude that the video poker machines in question are gambling machines. Upon completion of the trial, we direct that the trial court instruct the jury according to the principles stated in this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.