STATE of Wisconsin, Plaintiff-Respondent,†

v.

Carl R. KRAMER, Defendant-Appellant.

Court of Appeals

*No. 99–2580–CR. Oral argument July 11, 2000.—Decided November 8, 2000.*

2000 WI App 271

(Also reported in 622 N.W.2d 4.)

†Petition to review granted.

On behalf of the defendant-appellant, there were briefs and oral argument by *Stephen D. Willett* of *Stephen D. Willett, S.C.* of Phillips.

On behalf of the plaintiff-respondent, there was a brief by *Thomas J. Balistreri*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Thomas J. Balistreri*, assistant attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J.   Carl R. Kramer appeals from a judgment of conviction for two violations of the criminal commercial gambling statute, WIS. STAT. § 945.03(5) (1995–96),[1] and from orders denying his motions for suppression and dismissal of the felony charges. Kramer contends that he lacked the requisite

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

intent to commit the crimes, that the applicable criminal statutes are unconstitutionally vague, that the anticipatory search warrant executed at his establishment on December 5, 1996, was defective and required suppression of the evidence, and that he was the victim of selective prosecution. We agree that Kramer was selectively prosecuted and reverse the order denying his motion to dismiss and the judgment of conviction.[2]

## STATEMENT OF FACTS

¶ 2.   The essential facts concerning Kramer's selective prosecution claim are undisputed. Kramer owned and operated the Dog House Saloon in the Village of North Fond du Lac (the Village). On July 12, 1996, two Village police investigators went to Kramer's saloon and received video poker machine payouts from the bar. On September 2, 1996, a letter signed by the Fond du Lac County District Attorney and the Fond du Lac County Sheriff (the warning letter) was sent to all Fond du Lac county bar owners except those in the Village. The warning letter advised in relevant part:

> Some jurisdictions have already chosen to confiscate [the video poker] machines because of their mere presence, but the Fond du Lac County Sheriff's Department and the District Attorney's Office have been patient with the issue because of the vagueness of the law. The Court of Appeals has now established a precedent which will stand unless a higher court overrules it. In the future, Deputies will make note of who has the machines when they

---

[2] We will not address Kramer's remaining arguments. We need not address other issues raised where a decision on one point disposes of the appeal. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

do their routine tavern checks. If we receive a complaint that payouts of any kind are being made in an establishment, we will commence a commercial gambling investigation. You should be aware that a conviction for commercial gambling under state statute [§ ] 945.03 is a felony. The law also provides for such matters to be forwarded to the licensing authority for revocation of the establishment's liquor license.

¶ 3.  On December 4, 1996, Village police officers swore out an affidavit in support of a search warrant, alleging that on July 12, 1996, video poker machine payouts were received from the Dog House Saloon. An anticipatory search warrant was granted, allowing the police to search Kramer's establishment if officers received a second video poker payout. On December 4, 1996, two investigators from the Lake Winnebago Area Metropolitan Enforcement Group Drug Unit received payouts after playing a machine at the Dog House Saloon. On December 5, 1996, the search warrant was executed and the evidence obtained during this search was used against Kramer, resulting in his commercial gambling convictions.

## STANDARD OF REVIEW

¶ 4.  A trial court's historical findings of fact are reviewed under the clearly erroneous standard. *See State v. McCollum*, 159 Wis. 2d 184, 193, 464 N.W.2d 44 (Ct. App. 1990); *see also* WIS. STAT. § 805.17(2). However, we review de novo whether the trial court applied the correct legal standard to determine whether those historical facts give rise to a claim of selective prosecution. *See McCollum*, 159 Wis. 2d at 194. If the trial court applied the correct legal standard, then we

review its factual findings "under the clearly erroneous standard as to whether the [S]tate's action in investigating, arresting and charging . . . was motivated by an intent to discriminate . . . ." *Id.* Once a prima facie showing of selective prosecution is established, whether the State has provided a rational justification for the selective prosecution is a question of law which we review de novo. *See State v. Barman*, 183 Wis. 2d 180, 190–91, 515 N.W.2d 493 (Ct. App. 1994).

## DISCUSSION

¶ 5. *State v. Hahn*, 203 Wis. 2d 450, 553 N.W.2d 292 (Ct. App. 1996), decided on July 18, 1996, and referenced in the warning letter, held that a video poker machine is either a gambling machine or an amusement machine, depending upon whether money is paid to a user. *Hahn*, released after the July 12, 1996 law enforcement visit to the Dog House Saloon, prompted a change in the Fond du Lac county prosecution policy that all but the Village bar proprietors were cautioned about via the September 2, 1996 warning letter. Because receipt of the warning letter would have allowed Kramer to avoid the commercial gambling criminal prosecutions and convictions, he contends that he is the victim of selective prosecution.

¶ 6. To establish a claim of selective prosecution, the defendant must establish a prima facie case that (1) he or she is a member of a class being prosecuted solely because of race, religion, color or other arbitrary classification, or that he or she alone is the only person who has been prosecuted under this statute; and (2) the prosecution is based on either a desire to prevent the exercise of constitutional rights or motivated by the personal vindictiveness of the prosecutor or the respon-

sible administrative agency recommending prosecution. *See Barman*, 183 Wis. 2d at 188–89. In other words, Kramer must demonstrate that his prosecution had a discriminatory effect and a discriminatory purpose. Once Kramer establishes a prima facie case of selective prosecution, the burden shifts to the prosecutor to demonstrate a valid exercise of prosecutorial discretion. *See id.* at 187.

¶ 7. The State argues that there was no discriminatory effect upon Kramer because all Village tavern owners who allegedly violated the commercial gambling statute were prosecuted and there were no similarly situated taverns outside the Village. The State contends that there was "no reason to believe that tavern owners outside North Fond du Lac even had video slot machines, much less that they were using any such machines for gambling." In essence, the State argues that all the commercial gambling occurring in Fond du Lac county took place solely in the Village of North Fond du Lac.

¶ 8. This assertion belies common sense. If there was no reason to believe that tavern owners outside the Village had video gambling machines, why did the sheriff's department and the district attorney send everyone but the Village tavern owners a warning letter? The mass mailing of the warning letter to most Fond du Lac county taverns strongly suggests that the sheriff's department and the district attorney's office suspected that many Fond du Lac county taverns possessed video gambling machines and thus needed warnings. The absence of prosecutions outside the Village does not prove that there were no similarly situated tavern owners outside of the Village, but suggests that those tavern owners who received the warning letter were prudent enough to heed its warning.

¶ 9.   Here, the trial court identified the correct legal standard when it stated that "selective prosecution can be raised when the member who is being prosecuted is a member of a protected class such as race, religion, color or other arbitrary classification." However, we conclude that the trial court's finding that the warning letter did not create an arbitrary classification is clearly erroneous. The September 2, 1996 letter itself, signed by the district attorney, created arbitrary classifications of tavern owners: those who received the warning letter and those who did not. We conclude that the trial court correctly stated that "the bottom line is that the—a letter from the DA and the sheriff [is] not constitutionally required. People are expected to follow the law and obey the law." However, where the district attorney's office undertakes to warn the public about changes in prosecution policy, it assumes the responsibility of treating all affected citizens equally.

¶ 10.   The only criminal prosecutions for commercial gambling occurred in taverns in the Village—the only Fond du Lac county taverns that were not sent the warning letter. Kramer did not receive the warning letter and he was prosecuted for the crime addressed in it. We are satisfied that the letter had a discriminatory effect.

¶ 11.   Kramer has established a prima facie case of discriminatory effect. He must also establish a prima facie case of discriminatory purpose. *See id.* at 188–89. This discriminatory purpose must be "more than . . . intent as awareness of consequences"; it must be " 'because of,' not merely 'in spite of,' its adverse effects

upon an identifiable group." *Id.* at 190 (citation omitted).

¶ 12.   Kramer contends that the warning letter itself evidences a discriminatory purpose because the letter was an intentional act of exclusion on the part of the district attorney's office. Through its failure to send the warning letter to certain communities, Kramer argues, the district attorney's office demonstrated its intent to discriminate against these communities. We agree. The inequitable distribution of the warning letter constitutes prima facie evidence of a purposeful intent to discriminate against Village tavern owners.

¶ 13.   Kramer has thus established a prima facie case of selective prosecution. The State now must demonstrate that the uneven distribution of the warning letter constitutes a valid exercise of prosecutorial discretion. *See id.* at 187.

¶ 14.   The State argues that the warning letter was a valid exercise of discretion because the district attorney left primary responsibility for the letter in the hands of the sheriff's department. The State argues that because the sheriff's department, not the district attorney's office, was primarily responsible for the warning letter, the recipients of the warning letter represent the jurisdiction of the sheriff's department, and thus the letter was sent only to taverns normally inspected by the sheriff's department. The State contends that the letter communicates a new policy by the sheriff's department to investigate gambling activity.

¶ 15.   This explanation contradicts the plain language of the letter. The warning letter states that "henceforth [investigation and prosecution of gambling offenses] will be the policy of the Fond du Lac County

Sheriff's Department *and the District Attorney's Office*." (Emphasis added.) While the State attempts to attribute the distribution of the letter to the sheriff department's jurisdiction, it fails to justify the letter's distribution in light of the wider jurisdiction of the district attorney. The warning letter articulated a joint district attorney and sheriff's department policy regarding commercial gambling. The warning letter was signed jointly by both the district attorney and the sheriff. Consequently, the district attorney and the sheriff must take joint responsibility not only for the letter's content but also for its distribution. The State's arguments fail to demonstrate a valid exercise of prosecutorial discretion; thus, Kramer's prima facie showing of selective prosecution has not been rebutted.

## CONCLUSION

¶ 16.　Kramer has made a prima facie showing of selective prosecution because (1) only members of the arbitrary class of bar owners in the Village were prosecuted, and (2) this arbitrary class was created by the warning letter. The State has failed to rebut this claim by demonstrating a valid exercise of prosecutorial discretion. The State has not offered a valid reason for the inequitable distribution of the warning letter. Therefore, we hold that Kramer was selectively prosecuted and reverse the order denying his motion to dismiss and the judgment of conviction.

*By the Court.*—Judgment and orders reversed.