State of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Carl R. Kramer, Defendant-Appellant.

Supreme Court

*No. 99–2580–CR. Oral argument September 17, 2001.—Decided December 18, 2001.*

2001 WI 132

(Also reported in 637 N.W.2d 35.)

1009

1010

1011

1013

For the plaintiff-respondent-petitioner the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *Stephen D. Willett* and *Stephen D. Willett, S.C.,* Phillips, and oral argument by *Stephen D. Willett.*

¶ 1. WILLIAM A. BABLITCH, J. Petitioner Carl Kramer (Kramer), a tavern owner in the Village of North Fond du Lac, was convicted on two counts of being a party to the crime of commercial gambling after his tavern made payouts on two separate occasions to police investigators who earned credits on a video slot machine in the tavern. Kramer had moved to dismiss his criminal complaint on selective prosecution grounds, arguing that he and other owners of taverns located in North Fond du Lac were unfairly singled out for prosecution. The circuit court denied this motion, permitting the trial at which the defendant was convicted. The court of appeals reversed both the order denying Kramer's motion to dismiss and his judgment of conviction after concluding that Kramer was selectively prosecuted.

¶ 2. The State now appeals and asserts that Kramer did not meet his burden on one of the elements of selective prosecution: that the prosecution had a discriminatory effect. We disagree. Because the evidence in this case establishes a prima facie showing of discriminatory effect, and because the State concedes that there was a prima facie showing of discriminatory purpose, we agree with the court of appeals' determination that Kramer established a prima facie claim of selective prosecution. We disagree, however, with the court of appeals' determination that the State failed to rebut this prima facie claim by demonstrating a valid exercise of discretion. The State was never afforded the opportunity to rebut this prima facie claim by presenting evidence showing a valid use of prosecutorial discretion. We therefore reverse the court of appeals' decision and remand to the circuit court for an evidentiary hearing on the rebuttal issue.

I

¶ 3.   Kramer owned The Dog House Saloon in the Village of North Fond du Lac in Fond du Lac County. On July 12, 1996, a bartender at The Dog House Saloon paid cash to an undercover police investigator for credits the investigator had accumulated while playing a video slot machine. The investigator was a member of the Lake Winnebago Area Metropolitan Enforcement Group Drug Unit (MEG Unit). The MEG Unit was working with the Village of North Fond du Lac Police Department in investigating commercial gambling in North Fond du Lac. At that time, the Fond du Lac County District Attorney's Office and the Fond du Lac County Sheriff's Department were allegedly not investigating or prosecuting such activity because they believed that the law was unclear concerning whether this activity constituted criminal commercial gambling in violation of Wis. Stat. § 945.03(5)(1995–96).[1]

¶ 4.   This prosecution policy was later changed in light of the court of appeals' decision in *State v. Hahn,* 203 Wis. 2d 450, 553 N.W.2d 292 (Ct. App. 1996). In *Hahn,* Hahn was prosecuted under Wis. Stat. § 945.03(5) after he collected proceeds from video poker machines, which he had placed in three Jefferson County taverns. *Id.* at 452. The issue presented to the court of appeals

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

This statute provides in relevant part as follows:

945.03   Commercial gambling. Whoever intentionally does any of the following is engaged in commercial gambling and is guilty of a Class E felony:

. . . .

  (5) Sets up for use for the purpose of gambling or collects the proceeds of any gambling machine. . . .

was whether Hahn's video poker machines were "gambling machines" under Wis. Stat. § 945.01(3). *Id.* at 454. The court held that a video poker machine is a "gambling machine" only if it affords a successful player an opportunity to obtain something of value, even if the machine itself does not award the prize. *Id.* at 457–458. Thus, *Hahn* clarified the type of machine that may form the basis for a violation of § 945.03(5).

¶ 5. On September 2, 1996, the Fond du Lac County District Attorney and the Fond du Lac County Sheriff sent a letter to tavern owners in the county warning them of the change in policy and informing them that complaints of payouts on video poker machines would now be investigated and prosecuted. The body of the letter stated in full:

Dear Tavern Owner/Liquor License Holder:

We are writing to you today to address the issue of video games that can be used as gambling devices. We recognize the fact that this issue is controversial and has been in litigation for some time. The Wisconsin Attorney General has taken the position that video poker machines are gambling machines. A recent Court of Appeals decision indicates that their presence is not in itself a violation, *but any type of pay-out from playing the machine constituted an act of gambling.*

Some jurisdictions have already chosen to confiscate machines because of their mere presence, but the Fond du Lac County Sheriff's Department and the District Attorney's Office have been patient with this issue because of the vagueness of the law. The Court of Appeals has now established a precedent [*Hahn*] which will stand unless a higher court overrules it. *In the future, Deputies will make note of who has machines when they do their routine tavern checks. If we receive a*

> *complaint that payouts of any kind are being made in an establishment, we will commence a commercial gambling investigation.* You should be aware that a conviction for commercial gambling under state statute 945.03 is a felony. The law also provides for such matters to be forwarded to the licensing authority for revocation of the establishment's liquor license.
>
> We are sure that the legal battle will continue over video gambling, but *this henceforth will be the policy of the Fond du Lac County Sheriff's Department and the District Attorney's Office.* We do not seek to exacerbate the situation, but we will not be put in a position where we are unable to respond in an effective manner to a violation of the law. *For those of you who do not have machines, we apologize for taking your time. For those of you that do, this letter will serve as your only warning to this policy.* If you have any questions on this matter, please feel free to call on us. [Second, third, and fourth emphases added.]

This letter was not sent to Kramer or any other owner of a tavern located in the Village of North Fond du Lac.

¶ 6. On December 4, 1996, after playing a video slot machine at The Dog House Saloon, an undercover investigator from the MEG Unit received a payout from Kramer, who was tending bar at that time. The next day, a search warrant was executed at the tavern, during which a video slot machine was seized. That same day, search warrants were also executed and video gambling machines seized at several other North Fond du Lac taverns, including (1) The North Fondy Connection owned by Charles Erke; (2) The Village Vault owned by Carol Van Norman; and (3) The Freight House Tavern owned by Roger Lange.

¶ 7. Kramer was subsequently charged with two counts of being a party to the crime of commercial gambling in violation of Wis. Stat. §§ 939.05 and

945.03(5) for the payouts on July 12, 1996 and December 4, 1996. Charges were also brought against Erke, Van Norman, and Lange. No tavern owners outside the Village of North Fond du Lac were prosecuted on commercial gambling charges.

¶ 8. Kramer moved to dismiss the charges based in part on the claim that he was the victim of selective prosecution. He alleged that he and other owners of taverns located in North Fond du Lac were unfairly singled out for prosecution. According to Kramer, this systematic prosecution was evidenced by the fact that he and the other North Fond du Lac tavern owners were the only tavern owners in the county prosecuted even though they never received a letter from the prosecutor informing them of the change in policy. This unfairness was exacerbated, Kramer contended, by the fact that North Fond du Lac Police Chief Larry Wodack assured him and the other tavern owners that their use of video slot machines was legal, while at the same time Wodack was conducting an investigation into alleged commercial gambling against these same owners. Kramer alleged that Wodack's overall objective was to eliminate some of the taverns in North Fond du Lac.

¶ 9. The Fond du Lac County Circuit Court, the Honorable Peter L. Grimm presiding, denied the motion, concluding that Kramer had failed to make a prima facie case of selective prosecution. The court noted that selective prosecution may be raised when the defendant is a member of a protected class; it concluded, however, that Kramer did not fall within any such classification. Selective prosecution, the court stated, could also occur in instances where the defendant is a solitary prosecution. The court then viewed Kramer's evidence to support this claim, including various police reports showing three seizures of video

gambling machines in City of Fond du Lac taverns. The owners of these taverns were never prosecuted. The court determined, however, that the city cases did not support the selective prosecution claim because they were factually distinguishable from Kramer's case based on a lack of evidence to show commercial gambling. The court noted that in two of the city cases there was no evidence of payouts or of actual customers playing the games to get money from the tavern owners. In the third city case, although there was evidence that the tavern owner admitted to video gambling taking place in the tavern, the court concluded that there was still no actual evidence of a payout to a customer. This evidence, the court stated, amounted to an insufficient statistical showing to constitute a prima facie claim of selective prosecution.

¶ 10.  The court did not regard the distribution of the warning letter as having any significance on the selective prosecution claim; in fact, it stated that the letter by itself was insufficient to show evidence of malicious prosecution. The prosecutor, the court stated, was not constitutionally required to provide any such warning letter because the owners were expected to follow and obey the law. In addition, no vindictiveness was found on the part of the police to support the selective prosecution claim. The court stated that the desire to have fewer taverns was not an improper motive. After concluding that a prima facie case was not established, the court excused a number of witnesses the State had produced to rebut any prima facie showing. A jury later convicted Kramer on the two counts.

¶ 11.  Kramer appealed, and, in a published decision, the court of appeals reversed, holding that Kramer had been selectively prosecuted. *State v. Kramer,* 2000 WI App 271, ¶ 1, 240 Wis. 2d 44, 622 N.W.2d 4. The

court concluded that, based primarily on the discriminatory manner in which the county distributed the warning letter, Kramer had presented a prima facie showing of selective prosecution. *Id.* at ¶¶ 10–13. The court also concluded that the State had failed to rebut this showing by demonstrating a valid exercise of prosecutorial discretion. *Id.* at ¶¶ 13–15. As a result, the court reversed the order denying Kramer's motion to dismiss and reversed his judgment of conviction. *Id.* at ¶ 16.

¶ 12. We granted the State's petition for review. On appeal to this court, the State concedes that Kramer established a prima facie showing of discriminatory purpose, which is one of the two prongs necessary to establish a prima facie case for selective prosecution. However, it argues that Kramer's selective prosecution claim must fail because he did not establish a prima facie showing on the other prong, that the prosecution had a discriminatory effect. More specifically, the State asserts that Kramer failed to present sufficient evidence to show that similarly situated tavern owners outside the Village of North Fond du Lac were also engaged in commercial gambling but were not prosecuted. We disagree. As discussed below, the evidence presented by Kramer established a prima facie showing of discriminatory effect, and as a result, a prima facie case for selective prosecution was made. We disagree with the court of appeals' conclusion, however, that the State failed to rebut this prima facie showing because it was never afforded an opportunity to present evidence on this issue. For this reason, this case must be remanded for further proceedings.

## II

¶ 13. This case presents two issues concerning Kramer's claim of selective prosecution. The first issue is whether he presented a prima facie case for selective prosecution. We conclude that he did. The second issue is whether the State rebutted this prima facie case by presenting evidence of a valid exercise of prosecutorial discretion. We conclude that remand to the circuit court is necessary to decide this issue.

■

¶ 14. "A prosecutor has great discretion in deciding whether to prosecute in a particular case." *County of Kenosha v. C & S Mgmt.*, 223 Wis. 2d 373, 400, 588 N.W.2d 236 (1999) (citing *Sears v. State*, 94 Wis. 2d 128, 133, 287 N.W.2d 785 (1980)). "Exercise of this discretion necessarily involves a degree of selectivity." *Sears*, 94 Wis. 2d at 134. For this reason, a prosecutor's conscious exercise of some selectivity in enforcement does not in itself create a constitutional violation. *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). A violation of the Fourteenth Amendment of the United States Constitution will occur, however, when a defendant can show "persistent selective and intentional discrimination in the enforcement of the statute in the absence of valid exercise of prosecutorial discretion." *State v. Johnson*, 74 Wis. 2d 169, 172, 246 N.W.2d 503 (1976).

■

¶ 15. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). An allegation that the defendant was selectively prosecuted is judged under ordinary equal protection stan-

dards. *C & S,* 223 Wis. 2d at 401 (citing *Wayte v. United States,* 470 U.S. 598, 608 (1985)). A defendant has the initial burden to present a prima facie showing of discriminatory prosecution before he or she is entitled to an evidentiary hearing on the claim. *Id.* (citing *State v. Nowakowski,* 67 Wis. 2d 545, 565–66, 227 N.W.2d 697 (1975)). If the defendant succeeds, the burden then shifts to the state to show that the charging decision reflects a valid exercise of prosecutorial discretion. *Johnson,* 74 Wis. 2d at 175.

¶ 16. A defendant establishes a prima facie case when the facts presented are sufficient to raise a reasonable doubt as to the prosecution's purpose. *See Nowakowski,* 67 Wis. 2d at 567–68 (applying *United States v. Falk,* 479 F.2d 616, 620–23 (7th Cir. 1973)). More specifically, a prima facie case requires the defendant to submit evidence which, if credited, is sufficient to establish a fact or facts which it is adduced to prove. *See Thomas v. City of West Haven,* 734 A.2d 535, 540 (Conn. 1999). In other words, it is evidence that is sufficient to raise an issue to go to the trier of fact. *Id.* (citing 9 Wigmore *Evidence* § 2494 (4th ed. 1974)).

¶ 17. We review the circuit court's decision on whether the defendant has established a prima facie case on selective prosecution under the clearly erroneous standard because both prongs of the analysis for selective prosecution (discriminatory purpose and discriminatory effect) essentially involve factual inquiries. *See State v. McCollum,* 159 Wis. 2d 184, 193–94, 201–02, 464 N.W.2d 44 (Ct. App. 1990); *United States v. Gutierrez,* 990 F.2d 472, 475 (9th Cir. 1993). Under this standard, we will uphold the decision of the circuit court if it is supported by credible evidence or reason-

able inferences that can be drawn from this evidence. *See State v. Lopez,* 173 Wis. 2d 724, 729, 496 N.W.2d 617 (Ct. App. 1992). Our review of whether the circuit court applied the correct legal standard, however, is a question of law that we review de novo. *McCollum,* 159 Wis. 2d at 194.

¶ 18.  To establish a prima facie showing on a selective prosecution claim, a defendant must show that the prosecution had a discriminatory effect and that it was motivated by a discriminatory purpose. *C & S,* 223 Wis. 2d at 401 (citing *Wayte,* 470 U.S. at 608). That is, a defendant must show that he or she has been singled out for prosecution while others similarly situated have not (discriminatory effect) and that the prosecutor's discriminatory selection was based on an impermissible consideration such as race, religion or another arbitrary classification (discriminatory purpose). *Id.* (citing *United States v. Kerley,* 787 F.2d 1147, 1148 (7th Cir. 1986)); *Sears,* 94 Wis. 2d at 134 (citing *Oyler,* 368 U.S. at 456). Under the discriminatory purpose prong, a defendant is not limited to proving his or her case through proof of discriminatory selection based on suspect or arbitrary classifications. In cases involving solitary prosecutions, a defendant may also show that "the government's discriminatory selection for prosecution is based on a desire to prevent the exercise of constitutional rights or motivated by personal vindictiveness on the part of a prosecutor or the responsible member of the administrative agency recommending prosecution." *Id.* at 135 (citations omitted).

¶ 19.  For purposes of this appeal, the parties concede that Kramer established a prima facie case for discriminatory purpose. The prosecutions were limited

to charges against North Fond du Lac tavern owners, indicating that the prosecutions were based on an arbitrary consideration: geographic location. At oral argument, the State conceded that the county's failure to distribute the warning letter to North Fond du Lac tavern owners shows a discriminatory intent against these tavern owners. Indeed, discriminatory intent was also evidenced by the fact that the State applied its prosecution policy retroactively only against Kramer for the July 12, 1996 incident, even though the letter suggested that the policy would only apply prospectively. Nevertheless, because of the concession, our review focuses on whether Kramer met his burden in establishing a prima facie case for discriminatory effect.

¶ 20. Under the discriminatory effect prong, we look at whether persons similarly situated to the defendant were generally not subject to prosecution. *C & S*, 223 Wis. 2d at 401. " '[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making prosecutorial decisions with respect to them.' " *Id.* at 404–05 (quoting *United States v. Olvis,* 97 F.3d 739, 744 (4th Cir. 1996)). The inquiry must focus on the governmental action challenged. That is, the inquiry examines whether the defendant is similarly situated to another group with respect to the challenged governmental action. *Klinger v. Dep't of Corr.,* 31 F.3d 727, 731 (8th Cir. 1994). Courts must be careful, however, not to define who is similarly situated too narrowly. *Chavez v. Ill. State Police,* 251 F.3d 612, 636 (7th Cir. 2001). The governmental action challenged in this case was the State's prosecution of tavern owners in North Fond du Lac for commercial gambling. The circuit court correctly examined the evidence to determine whether any

tavern owners outside of North Fond du Lac had also been engaged in commercial gambling but were not prosecuted. We examine the evidence in a similar manner.

¶ 21. In support of his motion, Kramer presented several police reports from the City of Fond du Lac Police Department involving three different city taverns where video slot machines were found in 1996. The report concerning a tavern named Beernuts is of particular importance to Kramer's claim. According to this report, the police received an anonymous complaint on September 5, 1996, alleging that a gambling machine was in operation at the tavern and that the tavern was making payouts for credits earned on the machine. The police then conducted an investigation on September 13, 1996, during which the owner and an employee of the tavern both admitted to making payouts. Although the police confiscated the gambling machine and referred the matter to the county district attorney's office, after the September 2, 1996 letter and change in policy, no subsequent prosecution was pursued. Beernuts is similarly situated to Kramer's tavern inasmuch as there was evidence that Beernuts likewise made payouts for credits earned on a gambling machine.

¶ 22. The other police reports submitted by Kramer involved Frannie's Bar and Sully's Tavern. In both cases, during checks of taverns for video gambling machines in April 1996, City of Fond du Lac police discovered machines in the taverns. The police confiscated the machines and referred the matters to the county district attorney's office. The owners of these taverns were never prosecuted. The police reports do not indicate whether the owners of the taverns were making payouts on these machines, as Kramer did at his tavern on July 12, 1996 and December 4, 1996.

However, before the county changed its prosecution policy on September 2, 1996, there is no evidence that payouts were required for purposes of prosecution in Fond du Lac County. Further, the court of appeals did not decide *Hahn* until July 18, 1996. Thus, before July 18, 1996, Kramer was similarly situated to other tavern owners who had video gambling machines; that is, all such taverns were subject to prosecution—at least according to the interpretation of commercial gambling from the Attorney General—even though the district attorney was not pursuing such prosecutions. Therefore, despite the fact that the warning letter indicated that the prosecution policy would apply prospectively, the prosecutor applied it retroactively against Kramer only, not to other similarly situated taverns. Kramer was prosecuted for a violation during this period while other similarly situated tavern owners outside of North Fond du Lac were not prosecuted.

¶ 23. Finally, the letter is important in our analysis. The sending of the letter suggests that many tavern owners throughout the county were similarly situated to Kramer, that is, that they were equally suspected of having video poker machines. The letter warned that all tavern owners who had such machines would be subject to the same enforcement policy. Although the record is unclear as to which taverns received the letter, the record is clear that the letter was never sent to North Fond du Lac tavern owners. Several tavern owners in North Fond du Lac were then targeted for prosecution by the county for alleged violations. Tavern owners outside of North Fond du Lac were not prosecuted. This record presents no distinguishable legitimate prosecutorial factors that justify making these prosecutorial distinctions with respect to the North Fond du Lac tavern owners.

¶ 24. We conclude that, collectively, the above evidence established a prima facie case for discriminatory effect. The circuit court's determination on this issue was clearly erroneous because it was not supported by the credible evidence and reasonable inferences that could be drawn from the evidence. The circuit court applied the correct legal standard because it examined, as the discriminatory effect prong requires, whether Kramer had produced evidence to show that others similarly situated to him were not prosecuted. It erred, however, by requiring similarly situated cases to have identical evidence as Kramer's case for prima facie purposes. In its analysis, the court erred first by concluding that Beernuts was not similarly situated based solely on the fact that there was no actual evidence of a payout to a customer. The admission of the owner of Beernuts that payouts occurred was sufficient to show Beernuts was similarly situated. Second, the court erred by regarding the other police reports as irrelevant because they did not involve payouts. There was no express policy requiring payouts for prosecution prior to the release of the letter, and therefore, these taverns were similarly situated to Kramer with respect to his pre-*Hahn* prosecution. Finally, for reasons explained above, the court erred by concluding that the letter had no bearing on discriminatory effect. As discussed above, the evidence indicates that North Fond du Lac tavern owners were specifically targeted for prosecution while other similarly situated tavern owners outside of North Fond du Lac were ignored. This evidence was sufficient to raise a reasonable doubt as to the prosecution's purpose.

¶ 25. As a result, the burden now properly shifts to the State to rebut the prima facie showing of selective prosecution. At this stage, the test is whether there exists any reasonable basis to justify the classification. *State v. Barman,* 183 Wis. 2d 180, 191, 515 N.W.2d 493 (Ct. App. 1994). The government is required to put forth compelling evidence to meet its burden. *Falk,* 479 F.2d at 624. The defendant may also present additional evidence supporting his claim. *Id.* In this case, the circuit court never reached a determination on rebuttal evidence. It ended its analysis after concluding that a prima facie case had not been established. Regardless, an examination of the record reveals the State never submitted any evidence to rebut a prima facie case. Instead, the State argued that Kramer's evidence did not support a prima facie case and that therefore an evidentiary hearing was unnecessary. The State did argue that its decisions not to prosecute in the city cases were based on the adequacy of the evidence; however, there was insufficient evidence in the record at the time of the hearing to support this allegation.

¶ 26. The court of appeals concluded that the State failed to rebut the prima facie showing. The court noted that the State had alleged that the sheriff's department, not the district attorney, was responsible for the distribution of the letter and that therefore the letter indicated a new policy for the sheriff, not the district attorney. As the court of appeals concluded, this argument contradicts the plain language of the letter because it was signed by both the district attorney and the sheriff. However, the court of appeals' decision not to remand for an evidentiary hearing failed to provide the State with sufficient opportunity to present evi-

dence to rebut Kramer's prima facie case. We therefore remand to the circuit court to conduct an evidentiary hearing to determine whether the State has produced sufficient evidence to rebut this prima facie showing.

### III

¶ 27.   In sum, we conclude that Kramer met his burden in establishing a prima facie case of discriminatory effect. Therefore, because the parties concede that a prima facie case of discriminatory purpose was shown, we agree with the court of appeals' decision that a prima facie showing of selective prosecution was made. We disagree, however, with the court of appeals' determination that the State failed to rebut this showing with evidence displaying a proper use of prosecutorial discretion. The State must be afforded the opportunity to present evidence on this issue. As a result, we remand to the circuit court for an evidentiary hearing on this issue. The judgment of conviction stands subject to the results of the evidentiary hearing.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.