COURT OF APPEALS
DECISION
DATED AND FILED

May 27, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | | |
|---|---|---|
| **Appeal Nos.** | **2019AP1491** | Cir. Ct. Nos. 2018FO542 |
| | **2019AP1492** | 2018FO543 |
| | **2019AP1493** | 2018FO544 |
| | **2019AP1494** | 2018FO545 |
| | **2019AP1495** | 2018FO546 |
| | **2019AP1496** | 2018FO547 |

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

COUNTY OF WALWORTH,

   PLAINTIFF-RESPONDENT,

 V.

JOHN NEIGHBORS,

   DEFENDANT-APPELLANT.

---

APPEALS from judgments of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed*.

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

¶1 DAVIS, J.[1] John Neighbors appeals from judgments finding him guilty of six county zoning ordinance violations, after the trial court denied his motion to dismiss on the grounds of selective prosecution. On consolidated appeal, Walworth County asserts that Neighbors, by pleading guilty, waived his right to appeal. We disagree and choose to hear Neighbors' appeal pursuant to *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 275-76, 542 N.W.2d 196 (Ct. App. 1995), *abrogated on other grounds by Washburn County v. Smith*, 2008 WI 23, 308 Wis. 2d 65, 746 N.W.2d 243. We further hold that the trial court was not clearly erroneous in determining that Neighbors did not establish a prima facie case of selective prosecution. *See State v. Kramer*, 2001 WI 132, ¶¶17-18, 248 Wis. 2d 1009, 637 N.W.2d 35. We therefore affirm.

## BACKGROUND

¶2 In the summer of 2018, Neighbors hosted the "Wisco Family Love Fest" on his tree farm. The three-day event centered on a concert at the Alpine Valley Music Theatre and featured live music, food vendors, and shuttle bus transports to the concert. Approximately 220 guests attended, and some guests camped overnight on the property.

¶3 On the first day of the event, Nicholas Sigmund, a senior zoning officer for the Walworth County Land Use and Resource Management Department (LURM), visited the property. The Town of LaFayette clerk had called Sigmund to complain about a camping event (or to report a complaint—the record is unclear).

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

Sigmund went to investigate, observed a number of recreational vehicles, and became concerned that this "was a large scale camping event." Once "[he] saw the scale of what was going on," Sigmund decided to issue citations, since Neighbors' property is in a zoning district that does not allow for campgrounds.

¶4     Sigmund spoke to one of the event organizers and determined that the property belonged to Neighbors. The organizer also confirmed that guests would be camping overnight on the property. Sigmund did not meet Neighbors in person, but the two spoke on the phone while Sigmund was still at the property. Subsequent accounts of the call differ, but the parties agree that Sigmund told Neighbors that Neighbors could be fined for violating the relevant Walworth County camping ordinances. Despite this conversation, Neighbors did not cancel the event or restrict overnight camping.

¶5     After the event ended, LURM issued six citations to Neighbors, one for operating a campground on a parcel that was not zoned for such and another for operating a campground without a conditional use permit, for each of the three days of the event. Neighbors then filed a motion to dismiss for selective prosecution. Neighbors conceded most of the underlying facts and did not dispute that guests camped on his property. Instead, Neighbors argued that LURM singled him out for citation because he is African American, even though LURM generally ignores "rampant" camping throughout the county.

¶6     The trial court held an evidentiary hearing to determine whether Neighbors could establish a prima facie case for selective prosecution, by showing: (1) that he was singled out for citation while others similarly situated were not

3

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

(discriminatory effect); and (2) that this selection was because of his race or another impermissible consideration (discriminatory purpose). *See Kramer*, 248 Wis. 2d 1009, ¶18. A number of witnesses testified about camping and camping events in Walworth County; Neighbors, Sigmund, and another LURM employee testified as well. At the conclusion of this testimony, the trial court continued the matter for an oral ruling, giving the parties the opportunity in the interim to supplement the record and provide further briefing.

¶7 In a detailed oral ruling, the trial court concluded that Neighbors had not met his burden of showing selective prosecution. The court first determined that Neighbors had not shown that he was singled out for prosecution. The court distinguished Neighbors' event from many of the instances of small-scale camping that witnesses testified about at the hearing, which for one reason or another did not result in citations. The court reasoned that "[s]omeone parking a trailer out in the middle of a field where they're not supposed to camp, a single family, or a single person circumstance, is not a similarly situated circumstance to that which Mr. Neighbors was in." Neighbors' event, by contrast, was much larger and featured food vendors, restroom facilities, and shuttle busing.

¶8 The court therefore focused on the handful of large-scale events that it determined were similarly situated. The only recent event of that nature was a music festival called Wise Fest. The court acknowledged that LURM did not cite Wise Fest, even though the event operated without a conditional use permit. The court pointed out, however, that LURM indisputably was not made aware of Wise Fest's occurrence "until well after that event had concluded." By that point it would have been impractical—and contrary to LURM standard practice—to investigate or

4

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

cite the property's owners. There was also evidence of "two other campground or camping-type situations in the past" on the scale of Neighbors' event, but in fact "those entities did receive citations." Therefore, the court found that based on the evidence in the record, "the defense has [not] made a prima facie showing that this has been something where Mr. Neighbors has been singled out for prosecution while others similarly situated have not."

¶9    Second, the trial court determined that even if Neighbors had been singled out, there was no evidence of discriminatory purpose. The court noted that LURM was not obligated to warn Neighbors or allow him to remedy the violation before issuing citations:

> [I]t's a discretionary call on the part of the [zoning] officer as to whether or not to issue a citation for a situation that they have been made aware of and that they have looked into. And it is dictated by the type of situation it is. One camper sitting in someone's back lot that somebody might be living in or might not be living in is a completely different circumstance than someone who opens up their private acreage to camping for an event such as Alpine Valley— completely different.

Therefore, Neighbors could not point to Sigmund's immediate decision to cite him, without official warning or opportunity to correct, as indicative of any discriminatory purpose. The court further found that there was no evidence of racial prejudice (or bias against Neighbors specifically) by LURM or its officers:

> There is no evidence of any [racial] name calling. There is no evidence of any racial motivation on the part of LURM or its officers. There is no pattern of behavior here showing targeting of racial minorities or other sort of arbitrary classification of a person…. [And as to the inference that] Mr. Sigmund didn't like him[,] [w]ell[,] you['d] have to show evidence of that, and there is none. The fact that Mr. Sigmund met Mr. Neighbors a few times previously, there

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

> was no evidence that it was a negative interaction between them or that words were exchanged or that either one of them walked away upset or angry with the other about what had happened; there is none. No evidence.

The court concluded that Neighbors had not established a case for selective prosecution and that his citations were just an "unfortunate circumstance" resulting from someone calling in a complaint, LURM investigating, and Neighbors "just [being] in the wrong place at the wrong time." Neighbors then pled guilty to the citations.

## DISCUSSION

¶10    As a threshold matter, we must determine whether we should review Neighbors' appeal, despite his guilty plea. The County argues that we should not, based on waiver. And, in fact, "[i]t is well-established that a plea of guilty, knowingly and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses." *County of Racine v. Smith*, 122 Wis. 2d 431, 434, 437, 362 N.W.2d 439 (Ct. App. 1984) (holding the waiver rule applicable to cases involving civil forfeitures). This rule is one of judicial administration, however, and not power: an appellate court may exercise its discretion to review nonjurisdictional errors. *State v. Riekkoff*, 112 Wis. 2d 119, 123-24, 332 N.W.2d 744 (1983). In determining whether to apply the waiver rule, this court has considered: (1) whether the guilty plea avoided an unnecessary trial; (2) whether the trial court had the opportunity to squarely address and create an adequate record of the issue now on appeal; (3) whether the defendant is merely attempting to "game the system" (for example, by appealing a sentence that is harsher than expected); and (4) whether the resulting decision would augment our case law. *Quelle*, 198 Wis. 2d at 275-76.

6

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

¶11     Despite the County's arguments to the contrary, we find that the balance weighs in favor of our taking up Neighbors' appeal.  Although factor (4) is not so applicable—this decision applies well-settled law to Neighbors' claim—the other factors support discretionary review.  The parties agree that guests camped on Neighbors' property in violation of county ordinances, so a trial on the merits would have largely been a waste of resources.  On the selective prosecution issue now before us, the trial court held a full evidentiary hearing and rendered a thoughtful and comprehensive oral ruling.  Certainly the issue has been thoroughly addressed at that level, and the record for appeal is well developed.  Practically speaking, the evidentiary hearing acted as a substitute for trial.  With his subsequent guilty plea, Neighbors knowingly agreed to being fined the full amount of his citations, meaning it is not possible that Neighbors is now appealing merely because he is unhappy with the post-plea disposition.  To the contrary, it appears that Neighbors viewed selective enforcement as his best, if not only, defense.  Consequently (and commendably, in our view), Neighbors sought to preserve that issue for appeal in a manner that avoided the unnecessary expense of a contested trial he was almost certain to lose, and he expressly noted on the record that he was pleading guilty for that very reason.  Neighbors should have the opportunity to have his appeal considered on the merits, and we now turn to address the same.

¶12     Although prosecutors (and those with similar enforcement power, including local agency officials such as Sigmund) have wide discretion to prosecute a particular case, that power is subject to the protections of the Fourteenth Amendment of the United States Constitution.  ***Kramer***, 248 Wis. 2d 1009, ¶¶14-15, 18; ***County of Kenosha v. C & S Mgmt., Inc.***, 223 Wis. 2d 373, 400-401, 588

7

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

N.W.2d 236 (1999). Those protections include a prohibition on selective prosecution. **Kramer**, 248 Wis. 2d 1009, ¶14.

¶13 A defendant bears the initial burden of making a prima facie case for selective prosecution. **Id.**, ¶15. To do so, the defendant must show: (1) "that he or she has been singled out for prosecution while others similarly situated have not (discriminatory effect)," and (2) "that the prosecutor's discriminatory selection was based on an impermissible consideration such as race, religion or another arbitrary classification … [or] [i]n cases involving solitary prosecutions … [was] based on a desire to prevent the exercise of constitutional rights or [was] motivated by personal vindictiveness" (discriminatory purpose). **Id.**, ¶18 (citation omitted). Both these questions "essentially involve factual inquiries." **Id.**, ¶17. Accordingly, "[w]e review the circuit court's decision on whether the defendant has established a prima facie case on selective prosecution under the clearly erroneous standard," upholding the decision "if it is supported by credible evidence or reasonable inferences that can be drawn from this evidence." **Id.** We review de novo, however, whether the trial court applied the proper legal standard. **Id.**

¶14 The trial court applied the correct legal standard, i.e., the two-part showing described above for proving a selective prosecution claim. We must therefore consider only whether the court was clearly erroneous in determining that the facts did not meet this standard. As to the first prong of the above test (discriminatory effect), the evidence supports the trial court's conclusion that Neighbors did not establish that he was singled out for prosecution. Neighbors presented evidence of repeated instances where others camped without receiving citations. In many of these cases, however, it was not clear that the properties were

8

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

subject to the Walworth County Zoning Ordinance or that LURM was aware of the camping.

¶15    In addition, many of these instances were small in scale and did not involve the potential safety hazards associated with large festival-type events. Sigmund and his colleague both testified that they took a flexible approach to those possible small-scale violations (for example, by sending warning letters), often because they were unsure whether camping was even occurring. The evidence thus shows that LURM exercises a wide degree of prosecutorial discretion—not every complaint or potential violation results in LURM issuing a citation. Sigmund testified that he personally has issued only three citations for violating the no-camping ordinance (including to Neighbors); however, he also testified that enforcement is largely reactionary and complaint driven: "I never go out in my car and say I'm going to go look for violations." And importantly, those citations Sigmund did issue concerned events sharing two characteristics: "They were by far the largest scale camping that I've come across and it was actively happening when I was there." We express no opinion as to whether, as a matter of policy, this is a sound manner in which to enforce the camping ordinances. But it was not arbitrary or discriminatory. The trial court was not clearly erroneous in finding that Neighbors was similarly situated only to those individuals who Sigmund observed hosting large-scale events in violation of those ordinances.

¶16    The trial court also did not err in concluding that Neighbors was not singled out from this group. Again, LURM employees do not investigate potential violations after the fact; instead, they follow up on complaints and try to personally verify the violation. Therefore, the host of Wise Fest (the large festival the trial

9

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

court discussed in its ruling) cannot truly be considered a member of this group, as it would have been highly unusual for LURM to investigate Wise Fest months after the event (once LURM actually learned of the event's existence). Of the other two hosts of large-scale events, both received citations.[2] On this record, the trial court correctly concluded that Sigmund (and LURM) did not single out Neighbors.[3]

¶17    We further agree with the trial court that there is no evidence in the record of any discriminatory purpose. At the evidentiary hearing, Neighbors established that he is African American and that African Americans are a tiny percentage of the Walworth County population. By itself, this is an insufficient basis to infer that Sigmund or LURM was motivated by racial bias. Without additional evidence, it was reasonable for the court to determine that Neighbors was cited because of the size of his event and Sigmund's ability to observe it, not because of his race.[4]

---

[2] There was also evidence that another large camping event was cited for exceeding its conditional use permit (a different ordinance violation than those at issue here). This further supports the conclusion that LURM is particularly concerned with enforcing the camping ordinances for large events/festivals, given the potential safety concerns these events are perceived as creating.

[3] At the hearing, Neighbors suggested that part of his selective prosecution case was based on the number (six violations) and magnitude (fines totaling almost $4000) of violations issued. There was no evidence pertaining to this point with respect to the similarly-situated events that were cited by LURM. That lack of evidence, together with the fact that Neighbors pled guilty to the violations as cited, leads us to the conclusion that the *degree* of enforcement among a similarly situated group could not have provided an alternative basis for a selective prosecution claim in this case, though it might in a future case, where supported by the record.

[4] There was also no evidence that those individuals cited by LURM shared any common characteristic, such as their race or membership in a protected class.

Nos. 2019AP1491
2019AP1492
2019AP1493
2019AP1494
2019AP1495
2019AP1496

¶18    To the extent this can be considered a solitary prosecution,[5] the trial court also correctly found no evidence of bias against Neighbors personally.  As the court explained in its ruling, the testimony merely established that Sigmund and Neighbors met in their professional capacities on a handful of occasions (Neighbors owns several local businesses and is on the Town of Lafayette Plan Commission). With only that evidence before it, the trial court correctly declined to speculate as to any personal motivation Sigmund may have had for citing Neighbors.  We therefore affirm the trial court's order dismissing Neighbors' selective prosecution claim, and we uphold Neighbors' guilty pleas.

*By the Court.*—Judgments affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] Neighbors is the only person in the past ten years to receive a citation for camping on private property without a conditional use permit.